STATE OF NORTH CAROLINA v. ROBERT CHARLES SINAPI

No. 274A04

(Filed 7 April 2005)

**Search and Seizure–search warrant for house–marijuana in curbside garbage–criminal history–probable cause**

Magistrates are entitled to draw reasonable inferences from the material supplied to them and their determination of probable cause is entitled to great deference. Here, the trial court erred by suppressing evidence seized from inside defendant's house pursuant to a search warrant that was based on marijuana plants in a garbage bag taken from defendant's curb, defendant's drug-related criminal history, and information that defendant was linked to a heroin sale and overdose.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 164 N.C. App. 56, 596 S.E.2d 822 (2004), affirming an order entered 13 March 2003 by Judge Howard E. Manning, Jr. in Superior Court, Wake County. Heard in the Supreme Court 8 December 2004.

*Roy Cooper, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State-appellant.*

*John T. Hall and Kyle S. Hall for defendant-appellee.*

*Patterson Harkavy LLP, by Ann Groninger, for American Civil Liberties Union of North Carolina Legal Foundation, Inc., amicus curiae.*

BRADY, Justice.

The issue before the Court is whether a search warrant issued for defendant Robert C. Sinapi's residence was sufficiently supported by probable cause such that the fruits of the resulting search were admissible at defendant's trial for violations of the North Carolina Controlled Substances Act. In particular, this Court must determine whether an affidavit alleging: (1) a single garbage bag containing eight wilting marijuana plants recovered by the Raleigh Police Department from defendant's front yard, (2) defendant's prior criminal history, and (3) information linking defendant to a heroin sale and overdose was sufficient to support the finding of probable cause

made by an impartial magistrate who then issued a search warrant for defendant's residence. We determine that the affidavit was sufficient to allow the magistrate to make a threshold finding of probable cause; therefore, we reverse the decision of the Court of Appeals affirming the superior court's grant of defendant's motion to suppress the evidence obtained pursuant to the search warrant in question.

## BACKGROUND

On 30 September 2002, Detective J.G. Hobby of the Raleigh Police Department submitted a search warrant application to a Wake County magistrate for defendant's residence at 3300 Pinecrest Drive in Raleigh, North Carolina. The application was supported by the affidavit of Detective Hobby, which reflected that on 5 September 2002, he was assigned to "follow-up" on a drug inquiry involving a heroin overdose in which defendant was implicated as the seller of the heroin. Detective Hobby began an investigation by conducting a criminal records check of defendant, which revealed that defendant had previously been arrested twice for drug-related offenses, once for possession of marijuana and once for possession of methaqualone. The affidavit also stated that, according to North Carolina Division of Motor Vehicles records, defendant resided at 3300 Pinecrest Drive.

According to Detective Hobby's affidavit, after he finished gathering this information, he and Detective J.D. Cherry, also of the Raleigh Police Department proceeded to defendant's residence. They arrived at 3300 Pinecrest Drive at approximately 8:00 a.m. on 26 September 2002 and performed "a trash pick-up . . . . [which] was made during the normal trash day and time." Pursuant to this "trash pick-up":

A single, white plastic garbage bag was recovered from the front yard/curb line area at 3300 Pinecrest Drive, beside . . . the driveway. Inside of the garbage bag [Detective Hobby] located eight marijuana plants. The plants appeared to be somewhat dried up and wilted. The marijuana weighed approximately 5½ ounces. The marijuana was field tested with a positive result for marijuana. Based on [Detective Hobby's] training and experience, this activity is consistent with a possible marijuana grow operation and illegal drugs sales.

Detective Hobby then concluded in the affidavit that:

This investigation has included a recent drug investigation where Robert Sinapi is believed to be involved in the sell/delivery of an

illicit drug, heroin. Criminal records indicate that he has prior arrests for possession of marijuana and methaqualone. An abundance of marijuana was recovered as a result of a trash pick-up at the residence. Based on the facts described above and my training and experience, I believe that there is probable cause to believe that the items to be seized, controlled substances in violation of G.S. [§] 90-95 and other items herein, are in the premises and on the person to be searched.

On 30 September 2002, in accordance with our Founding Fathers' preference for search warrants, Detective Hobby presented his affidavit and application for search warrant to a Wake County magistrate. That impartial magistrate determined that probable cause existed and issued a search warrant for defendant's residence at 3300 Pinecrest Drive. On 1 October 2002, Detective Hobby executed the search warrant and seized from defendant's home, *inter alia*, approximately 5 grams of heroin, approximately 62.4 grams of cocaine, approximately 3.8 grams of marijuana, and three marijuana plants. As a result of the seizure, on 6 January 2003, defendant was indicted by a Wake County grand jury for manufacturing marijuana, trafficking in marijuana by possession, trafficking in heroin by possession, trafficking in cocaine by possession, and maintaining a dwelling used for keeping and/or selling controlled substances.

On 27 January 2003, defendant filed a pretrial motion to suppress all evidence obtained as a result of the 1 October 2002 search of 3300 Pinecrest Drive. At the 5 February 2003 Criminal Session of Wake County Superior Court a hearing was conducted on defendant's motion to determine whether the magistrate properly concluded that probable cause was established.

During the suppression hearing, Detective Hobby testified that the refuse collection truck was in defendant's neighborhood, but the truck had not yet proceeded to Pinecrest Drive. When asked about the location of the garbage bag, Detective Hobby stated that "[t]he bag was approximately three to four feet from the driveway at the corner of the lot . . . approximately four to five feet off the roadway. So it's kind of sitting in the corner between the driveway and the road, just like someone were to walk out on the road and put their trash out." However, Detective Hobby stated that he did not see the garbage bag being placed on defendant's lawn. Detective Hobby also testified that, although there was "general household garbage" in the garbage bag, there was nothing inside the bag, such as mail or docu-

ments, physically linking the garbage bag to 3300 Pinecrest Drive. On cross-examination, Detective Hobby acknowledged that the City of Raleigh had "back yard pick-up of garbage" at that time but emphasized that, notwithstanding the City's policy, several other residences in the neighborhood also had "garbage sitting out by the curb."

After the hearing, the superior court judge orally entered an order granting defendant's motion to suppress all evidence seized as a result of the 1 October 2002 search of defendant's residence. On 13 March 2003, the superior court issued a written order, that contained the following conclusions of law:

1. The discovery of marijuana in a garbage bag located near the curb of the street and adjacent to the driveway at 3300 Pinecrest Drive on a normal garbage pick up day without any documentation linking the bag to the residence or the defendant and without any showing as to how, when and by whom it was placed along the curb, does not implicate the residence located at 3300 Pinecrest Drive and provides no reasonable basis to believe that controlled substances would be found therein or on the defendant.

2. The affidavit portion of the search warrant herein did not provide sufficient facts and circumstances to establish probable cause to believe that the items sought were located upon the premises of 3300 Pinecrest Drive.

. . . .

4. The evidence obtained as a result of the search conducted on September 30, 2002 at 3300 Pinecrest Drive, together with the fruits of that search, are inadmissable at the trial of the defendant.

The State appealed the order, and on 4 May 2004, a majority of the Court of Appeals affirmed the superior court's order, with Judge McCullough dissenting. *State v. Sinapi*, 164 N.C. App. 56, 596 S.E.2d 822 (2004). On 7 June 2004, the State filed notice of appeal to this Court based upon Judge McCullough's dissent.

## ANALYSIS

This Court must now determine whether the information contained in the affidavit prepared by Detective Hobby presented sufficient information to enable a magistrate to make a threshold determination of probable cause. In so doing, we note that the parties do

not challenge the superior court's findings of fact. Therefore, the scope of our inquiry is limited to the superior court's conclusions of law, which "are fully reviewable on appeal." *State v. Smith*, 346 N.C. 794, 797, 488 S.E.2d 210, 212 (1997).

As this Court acknowledged in *State v. Beam*, when addressing whether a search warrant is supported by probable cause, a reviewing court must consider the "totality of the circumstances." 325 N.C. 217, 220-21, 381 S.E.2d 327, 329 (1989); *see also Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548 (1983); *State v. Riggs*, 328 N.C. 213, 219-20, 222, 400 S.E.2d 429, 433-34 (1991); *State v. Arrington*, 311 N.C. 633, 641, 319 S.E.2d 254, 259 (1984). In applying the totality of the circumstances test, this Court has stated that an affidavit is sufficient if it establishes "reasonable cause to believe that the proposed search . . . probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause nor import absolute certainty." *Arrington*, 311 N.C. at 636, 319 S.E.2d at 256 (citations omitted). Thus, under the totality of the circumstances test, a reviewing court must determine "whether the evidence as a whole provides a substantial basis for concluding that probable cause exists." *Beam*, 325 N.C. at 221, 381 S.E.2d at 329; *see also Gates*, 462 U.S. at 238-39, 76 L. Ed. 2d at 548 (concluding that "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis' " to conclude that probable cause existed) (citation omitted).

In adhering to this standard of review, we are cognizant that "great deference should be paid a magistrate's determination of probable cause and that after-the-fact scrutiny should not take the form of a *de novo* review." *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258. We are also mindful that:

> "A grudging or negative attitude by reviewing courts toward warrants" is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner. [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

*Riggs*, 328 N.C. at 222, 400 S.E.2d at 434-35 (alterations in original) (citations omitted).

Most importantly, we note that a magistrate is entitled to draw reasonable inferences from the material supplied to him by an applicant for a warrant. *Id.* at 221, 400 S.E.2d at 434. To that end, it is well settled that whether probable cause has been established is based on " 'factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act.' " *Id.* at 219, 400 S.E.2d at 433 (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 93 L. Ed. 1879, 1890 (1949)) (alteration in original), quoted in *Gates*, 462 U.S. at 231, 76 L. Ed. 2d at 544. *"Probable cause is a flexible, common-sense standard.* It does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability is all that is required." *State v. Zuniga*, 312 N.C. 251, 262, 322 S.E.2d 140, 146 (1984) (emphasis added).

Here, the magistrate was entitled to rely on his personal experience and knowledge related to residential refuse collection to make a practical, threshold determination of probable cause. Based on the facts before him, the magistrate was entitled to infer that the garbage bag in question came from defendant's residence and that items found inside that bag were probably also associated with that residence. This conclusion is particularly bolstered by the location of the garbage bag and the fact that Detective Hobby retrieved it from defendant's yard at approximately 8:00 a.m. on the regularly scheduled garbage collection day in defendant's neighborhood.

The marijuana plants gathered from the garbage bag, taken in conjunction with defendant's drug-related criminal history and the information obtained by the Raleigh Police Department linking defendant to a heroin sale and overdose established, based on "the factual and practical considerations of everyday life," that there was a fair probability that contraband and evidence of a crime would be found in defendant's residence. Thus, the information contained in Detective Hobby's affidavit constituted a "substantial basis" for the magistrate to find probable cause sufficient to issue a search warrant for defendant's residence.

For the reasons stated above, the superior court's conclusion is inconsistent with the jurisprudence of this State, which establishes that a magistrate's "[r]easonable inferences from the available observations, particularly when coupled with common or specialized experience, long have been approved in establishing probable cause." *Riggs*, 328 N.C. at 221, 400 S.E.2d at 434. As a result, the search warrant was properly issued and the superior court erred in granting

defendant's motion to suppress the evidence of the 1 October 2002 search of his residence.

Accordingly, the decision of the Court of Appeals is reversed. This case is remanded to the Court of Appeals for further remand to the Wake County Superior Court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.