IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-40

 Filed: 5 January 2016

New Hanover County, Nos. 12 CRS 50964, 12 CRS 50965

STATE OF NORTH CAROLINA,

 v.

BRITTANY ALLMAN, Defendant.

 Appeal by the State from order entered 2 October 2014 by Judge Jack Jenkins

in New Hanover County Superior Court. Heard in the Court of Appeals 7 May 2015.

 Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz,
 for the State.

 Appellate Defender Staples Hughes, by Assistant Appellate Defender Paul M.
 Green, for defendant-appellee.

 GEER, Judge.

 The State appeals from an order granting defendant Brittany Allman’s motion

to suppress evidence of drug-related activity seized following the execution of a search

warrant at her residence. On appeal, the State argues that the search warrant

application revealed circumstances -- including the fact that two other residents of

the house were engaged in drug dealing and had lied to officers about where they

lived -- that gave rise to probable cause to believe evidence of drug-related activity

would be found in defendant’s residence. However, we conclude that these

circumstances, along with others in the search warrant affidavit, amount at most to

circumstances that our case law has held to be insufficient to establish probable cause
 STATE V. ALLMAN

 Opinion of the Court

that evidence of illegal activity exists at the location identified in the search warrant

application. We, therefore, affirm the trial court’s order granting defendant’s motion

to suppress.

 Facts

 Half-brothers Jeremy Lee Black and Sean Alden Whitehead lived at 4844

Acres Drive (“the Acres Drive residence”) in Wilmington, North Carolina together

with Logan McDonald and defendant, who was Mr. Black’s girlfriend. Officers

obtained a search warrant for the Acres Drive residence to search for evidence

relating to the sale of controlled substances. Officers conducted the search of the

Acres Drive residence while defendant was present and found various controlled

substances and paraphernalia. Defendant was then arrested.

 On 19 March 2012, defendant was indicted for possession of marijuana,

possession of a schedule I controlled substance, manufacturing a schedule I controlled

substance, possession with intent to sell or deliver marijuana, maintaining a vehicle

or dwelling for the sale or distribution of a controlled substance, and possession of

drug paraphernalia. On 2 June 2014, defendant filed a motion to suppress the

evidence obtained in the search of the Acres Drive residence, arguing that the search

warrant did not allege sufficient facts to support probable cause that evidence of drug-

related crimes would be found at the Acres Drive residence and, therefore, violated

 -2-
 STATE V. ALLMAN

 Opinion of the Court

N.C. Gen. Stat. § 15A-244 (2013). On 2 October 2014, the trial court entered an order

granting defendant’s motion to suppress.

 The application for a search warrant was supported by the affidavit of

Detective Anthony Bacon of the Vice and Narcotics Unit of the New Hanover County

Sheriff’s Office. After Detective Bacon set out in the affidavit his experience and

certain “common characteristics” that “people who use illegal controlled substances

share,” Detective Bacon then made the following factual assertions to support a

search of the Acres Drive residence.1 On 21 January 2012, Agent Joe Cherry of the

Brunswick County Sheriff’s Office called Detective Bacon and told him that he had

conducted a vehicle stop on Highway 74/76 eastbound just before the New Hanover

County Line. Agent Cherry identified the driver as Mr. Black and the passenger as

Mr. Whitehead. According to Agent Cherry, when he asked Mr. Whitehead about his

whereabouts prior to the traffic stop, Mr. Whitehead told him that Mr. Black and he

were half-brothers, that they left their residence at 30 Twin Oaks Drive in Castle

Hayne, N.C., and that they then visited a friend in Brunswick County. Mr.

Whitehead told Agent Cherry that they were on their way back to 30 Twin Oaks

Drive.

 1Thesearch warrant identified the residence to be searched as 4814 Acres Drive, while the
residence actually searched was at 4844 Acres Drive. Defendant did not make any arguments below
pertaining to the discrepancy between the address listed in the application and the address actually
searched, and that discrepancy is not an issue on appeal.

 -3-
 STATE V. ALLMAN

 Opinion of the Court

 Agent Cherry further told Detective Bacon that, during the roadside interview,

he called for a K-9 unit and the dog alerted to the presence of controlled substances

during an exterior “sniff.” Agent Cherry said he then searched the car and discovered

8.1 ounces of marijuana packaged in a Ziploc bag, which was inside a vacuum-sealed

bag, which in turn was inside a manila envelope. Agent Cherry said he also found

over $1,600.00 in cash. Agent Cherry reported to Detective Bacon that Mr.

Whitehead told Agent Cherry that he kept some marijuana in his vehicle at 30 Twin

Oaks Drive -- Mr. Whitehead claimed that he kept the marijuana in the vehicle so

that his mother would not know about it. Agent Cherry also said that Mr. Whitehead

owned two cell phones and one of those phones contained text messages related to the

sale of marijuana.

 Detective Bacon then described Mr. Whitehead’s prior record of being charged

with trafficking marijuana and sale and distribution of marijuana and of having been

convicted of possession with intent to sell and deliver marijuana. The affidavit noted

that Mr. Black had been charged with cocaine distribution and possession of

marijuana in the State of Florida, while, in North Carolina, Mr. Black had pled guilty

to first degree burglary.

 Detective Bacon asserted that according to Division of Motor Vehicles records,

both Mr. Black and Mr. Whitehead listed their home address at 30 Twin Oaks Drive.

The car Mr. Black was driving when stopped by Agent Cherry was registered to 30

 -4-
 STATE V. ALLMAN

 Opinion of the Court

Twin Oaks Drive. Detective Bacon obtained a search warrant for 30 Twin Oaks

Drive, but discovered, when executing the warrant, that Mr. Black and Mr.

Whitehead did not live there. Detective Bacon found no evidence of Mr. Black’s or

Mr. Whitehead’s belongings at 30 Twin Oaks Drive. Instead, Mr. Black’s and Mr.

Whitehead’s mother, Elsie Black, and their stepfather lived there. Ms. Black said

that her sons lived at “4814 Acres Drive” and described the residence to Detective

Bacon. She also said that there should be an old red truck and an old white truck at

the house. According to Ms. Black, her sons had a roommate named Logan

McDonald. She said that her sons used her address as a mailing address, but had

been living on Acres Drive for approximately three years.

 Another detective went to 4814 Acres Drive and found the property matched

the description given by Ms. Black. The detective checked the registration of the old

red truck and the old white truck, and one was registered to Mr. Black and the other

was registered to Mr. McDonald.

 Finally, Detective Bacon asserted that he “knows through training and

experience, subjects who deal in illegal controlled substances often use different

mailing addresses and lie to law enforcement about their home address to conceal

their illegal activities.”

 The trial court found that when Detective Bacon served the search warrant on

the Acres Drive house, the door was opened by defendant and Mr. McDonald. Once

 -5-
 STATE V. ALLMAN

 Opinion of the Court

inside, the detectives found various amounts of marijuana in the living room, and a

search of defendant’s room yielded a shotgun. The detectives also located a wall safe

behind a tapestry in defendant’s room, although defendant did not know the safe was

there and could not provide the combination. The detectives eventually opened the

safe and found syringes filled with a liquid substance believed to be psilocybin

mushrooms.

 The trial court further found that prior to applying for the search warrant,

Detective Bacon had not conducted surveillance or an investigation of the Acres Drive

residence to determine whether probable cause existed to believe that evidence of

violations of the North Carolina Controlled Substances Act had occurred or were

occurring there. Also, prior to submitting the search warrant application, Detective

Bacon “had not received any information that there would be controlled substances

found, kept, sold, manufactured or otherwise located at the residence of 4844 College

Acres Drive [in] Wilmington, NC.” Further, Detective Bacon’s supporting affidavit

attached to the warrant application contained no information that the Acres Drive

residence would contain evidence constituting a violation of the North Carolina

Controlled Substances Act, and, consequently, “did not contain any nexus between

the controlled substances sought to be found and the residence located at 4844 Acres

Drive[,] Wilmington, NC.”

 -6-
 STATE V. ALLMAN

 Opinion of the Court

 Based on these findings, the trial court made the following conclusions of law.

Because, at the time he applied for the search warrant, Detective Bacon “did not have

any information that controlled substances were likely to be found on the premises[,]”

and he “did not allege in his affidavit . . . that anyone had seen controlled substances

at the residence or that any controlled substances were being sold, kept or

manufactured” at the Acres Drive residence, the facts alleged in Detective Bacon’s

affidavit were insufficient, under the totality of the circumstances, to support a

finding of probable cause. Therefore, the trial court concluded, the evidence taken

from defendant “was in violation of her rights guaranteed by the Fourth, Fifth, and

Fourteenth Amendments to the United States Constitution and the parallel

provisions of the Constitution of the State of North Carolina. In addition, the

evidence was obtained in substantial violation of the provisions of Chapter 15A of the

North Carolina General Statutes.”

 Based on these conclusions of law, the trial court ordered the evidence obtained

against defendant from the Acres Drive residence to be suppressed. On 14 October

2014, the State gave notice of appeal from the order granting defendant’s motion to

suppress, certifying that the appeal was not taken for the purpose of delay pursuant

to N.C. Gen. Stat. § 15A-979(c) (2013).

 Standard of Review

 -7-
 STATE V. ALLMAN

 Opinion of the Court

 In arguing that the trial court should have denied the motion to suppress, the

State argues that Detective Bacon’s affidavit alleged sufficient facts to support the

existence of probable cause to search the Acres Drive residence.

 Our standard of review of an order granting or
 denying a motion to suppress is strictly limited to
 determining whether the trial judge’s underlying findings
 of fact are supported by competent evidence, in which event
 they are conclusively binding on appeal, and whether those
 factual findings in turn support the judge’s ultimate
 conclusions of law. [A] trial court’s conclusions of law
 regarding whether the officer had reasonable suspicion [or
 probable cause] to detain a defendant is reviewable de
 novo. [T]he trial court’s conclusions of law must be legally
 correct, reflecting a correct application of applicable legal
 principles to the facts found.

State v. Hudgins, 195 N.C. App. 430, 432, 672 S.E.2d 717, 718 (2009) (internal

citations and quotation marks omitted).

 Discussion

 The State first challenges the trial court’s findings of fact that Detective Bacon

did not conduct surveillance on the Acres Drive residence to determine if there was

probable cause to search that location; that Detective Bacon had not received any

information that there would be controlled substances at the Acres Drive residence;

and that Detective Bacon’s affidavit did not have any information that the Acres

Drive residence would contain evidence constituting a violation of the North Carolina

Controlled Substances Act. These findings of fact simply identify what the trial court

deemed to be lacking in Detective Bacon’s affidavit. They show the trial court’s

 -8-
 STATE V. ALLMAN

 Opinion of the Court

reasoning in determining -- as set out in the final finding of fact challenged by the

State -- that Detective Bacon’s affidavit “did not contain any nexus between the

controlled substances sought to be found [at] the residence located at 4844 Acres

Drive[,] Wilmington, NC.”

 We agree with the State that this last finding is more properly characterized

as a conclusion of law. See State v. Oates, 224 N.C. App. 634, 644, 736 S.E.2d 228,

235 (2012) (treating trial court’s determination of existence of “sufficient nexus

between the objects sought and the place to be searched” as conclusion of law), appeal

dismissed, 366 N.C. 585, 740 S.E.2d 473 (2013). However, the trial court’s

mislabeling of that conclusion of law as a finding of fact is immaterial to the question

whether the trial court properly concluded that Detective Bacon’s affidavit was

insufficient to support issuance of the search warrant.

 To perform a search in North Carolina, under article I, section 20 of the State

Constitution, an officer must have “ ‘probable cause to believe that a crime has been

[or is being] committed and that evidence of it can likely be found at the described

locus at the time of the search.’ ” State v. Smith, 124 N.C. App. 565, 571, 478 S.E.2d

237, 241 (1996) (quoting United States v. Ricciardelli, 998 F.2d, 8, 10 (1st Cir. 1993)).

Additionally, a search warrant must comply with N.C. Gen. Stat. § 15A-244. State v.

Hyleman, 324 N.C. 506, 509, 379 S.E.2d 830, 832 (1989).

 That statute provides,

 -9-
 STATE V. ALLMAN

 Opinion of the Court

 Each application for a search warrant must be made
 in writing upon oath or affirmation. All applications must
 contain:

 (1) The name and title of the applicant; and

 (2) A statement that there is probable cause to
 believe that items subject to seizure under
 G.S. 15A-242 may be found in or upon a
 designated or described place, vehicle, or
 person; and

 (3) Allegations of fact supporting the statement.
 The statements must be supported by one or
 more affidavits particularly setting forth the
 facts and circumstances establishing probable
 cause to believe that the items are in the places
 or in the possession of the individuals to be
 searched; and

 (4) A request that the court issue a search
 warrant directing a search for and the seizure
 of the items in question.

N.C. Gen. Stat. § 15A-244 (emphasis added).

 Our Supreme Court has explained that “probable cause cannot be shown by

conclusory affidavits stating only the belief of the affiant or an informer that probable

cause exists to issue the warrant. Recital of some of the circumstances underlying

this belief is essential.” Hyleman, 324 N.C. at 509, 379 S.E.2d at 832 (internal

citation omitted). While our case law supports the premise that “ ‘first-hand

information of contraband seen in one location will sustain a finding to search a

second location[,]’ ” Oates, 224 N.C. App. at 644, 736 S.E.2d at 235 (quoting State v.

 - 10 -
 STATE V. ALLMAN

 Opinion of the Court

McCoy, 100 N.C. App. 574, 577, 397 S.E.2d 355, 357 (1990)), “ ‘evidence obtained in

one location cannot provide probable cause for the search of another location when

the evidence offered does not implicate the premises to be searched[,]’ ” id. (quoting

State v. Washburn, 201 N.C. App. 93, 101, 685 S.E.2d 555, 561 (2009)).

 This Court has held, in applying N.C. Gen. Stat. § 15A-244(3), that “[t]he

affidavits must establish a nexus between the objects sought and the place to be

searched.” McCoy, 100 N.C. App. at 576, 397 S.E.2d at 357. “Usually this connection

is made by showing that criminal activity actually occurred at the location to be

searched or that the fruits of a crime that occurred elsewhere are observed at a certain

place.” Id. A search warrant applicant need not have direct information connecting

a particular place to be searched with fruits of a crime. Id. However, “ ‘[d]ifficult

problems can arise . . . where such direct information . . . is not available and it must

be determined what reasonable inferences may be entertained concerning the likely

location of those items.’ ” Id. (quoting Wayne R. LaFave, Search and Seizure, § 3.7(d)

at 103 (2d ed. 1987)).

 In interpreting the requirement of a “nexus,” our Supreme Court, in State v.

Campbell, 282 N.C. 125, 130, 191 S.E.2d 752, 756 (1972), held that an affidavit was

insufficient to establish probable cause when the affidavit stated only that (1) the

officer had arrest warrants charging the defendant and two other residents of the

premises with the sale and possession of narcotics; (2) the three residents had all sold

 - 11 -
 STATE V. ALLMAN

 Opinion of the Court

narcotics to an SBI agent and, based on the officer’s personal knowledge and

interviews with informants and local police officers, were actively involved in drug

sales, and (3) the defendant leased the premises. The Court observed that “[n]owhere

in the affidavit is there any statement that narcotic drugs were ever possessed or sold

in or about the dwelling to be searched.” Id. at 131, 191 S.E.2d at 757. Further,

“[n]owhere in the affidavit are any underlying circumstances detailed from which the

magistrate could reasonably conclude that the proposed search would reveal the

presence of illegal drugs in the dwelling.” Id. The Court concluded that an inference

that narcotic drugs were illegally possessed on the premises at issue did “not

reasonably arise from the facts alleged.” Id.

 This case is materially indistinguishable from Campbell. Nothing in Detective

Bacon’s application and affidavit indicated that he observed or received information

that drugs were possessed or sold at the Acres Drive residence. The State argues,

however, that such an inference arose as a natural and reasonable inference from

circumstances indicating that Mr. Black and Mr. Whitehead were engaged in drug

trafficking. The State points to Detective Bacon’s allegations in the warrant affidavit

that he learned Mr. Black and Mr. Whitehead had been previously convicted of crimes

involving marijuana and that Agent Cherry found marijuana, cash, and a cell phone

with messages consistent with sales of marijuana in Mr. Whitehead’s possession

during the traffic stop. These facts were relevant to whether Mr. Black and Mr.

 - 12 -
 STATE V. ALLMAN

 Opinion of the Court

Whitehead were engaged in drug dealing, but the Supreme Court in Campbell held

that information that a defendant was an active drug dealer was not sufficient,

without more, to support a search of the dealer’s residence.

 Indeed, our Supreme Court recently described Campbell as controlling when

“the affidavit . . . included no information indicating that drugs had been possessed

in or sold from the dwelling to be searched.” State v. McKinney, 368 N.C. 161, 166,

775 S.E.2d 821, 826 (2015). By contrast, in McKinney, the affidavit was found

sufficient when it alleged that (1) a citizen complained about heavy traffic in and out

of the defendant’s apartment with visitors making abbreviated stays; (2) officers

conducted surveillance of the apartment and saw a Pontiac arrive and the driver

enter the apartment, emerge six minutes later, and drive off; (3) officers stopped the

Pontiac for a traffic violation and the driver had $4,258.00 in cash and a gallon-size

plastic bag containing marijuana remnants; and (4) the driver’s cell phone had a

series of text messages sent and received just before the driver’s arrival at the

defendant’s apartment, suggesting that the driver had just completed a delivery of

drugs to the apartment. Id. at 162, 166, 775 S.E.2d at 823, 825. The Court

emphasized: “[T]he information available to the officer and provided to the magistrate

at the time the search warrant was requested and issued sufficiently indicated that

the transaction adumbrated in the texts was consummated moments later in

 - 13 -
 STATE V. ALLMAN

 Opinion of the Court

defendant’s apartment. Thus, this case is distinguishable from Campbell . . . .” Id. at

166, 775 S.E.2d at 825 (emphasis added).

 This case resembles Campbell and not McKinney. The affidavit here contained

no allegations evidencing the probable presence of drugs at the Acres Drive house.

No one observed any activity suggestive of drug trafficking or usage at the house, and

nothing connected the Acres Drive house with the cash, marijuana, and texts

suggestive of drug sales uncovered during the traffic stop. The State has cited no

opinions of this Court or the Supreme Court indicating that an affidavit comparable

to the one in this case is sufficient to support a search warrant. While the State

points to the allegation that Mr. Black and Mr. Whitehead lied about their residence,

that lie, while perhaps suggestive that drugs might be present at their actual

residence, does not make the drugs’ presence probable, especially given the affidavit’s

allegation that Mr. Whitehead claimed he kept his drugs in his vehicle.

 Unlike this case, in the cases relied upon by the State -- State v. Sinapi, 359

N.C. 394, 610 S.E.2d 362 (2005), State v. Riggs, 328 N.C. 213, 400 S.E.2d 429 (1991),

Oates, State v. Crawford, 104 N.C. App. 591, 410 S.E.2d 499 (1991), and State v. Byrd,

60 N.C. App. 740, 300 S.E.2d 16 (1983) -- the warrants authorizing searches of the

suspect residences were upheld because officers had discovered some specific and

material connection between drug activity and the place to be searched. See Sinapi,

359 N.C. at 395, 610 S.E.2d at 363 (affiant performed inventory of trash bag located

 - 14 -
 STATE V. ALLMAN

 Opinion of the Court

on curb of suspect residence that revealed eight marijuana plants); Riggs, 328 N.C.

at 215-16, 400 S.E.2d at 431 (affiant successfully coordinated controlled purchase of

drugs using confidential source at suspect residence); Oates, 224 N.C. App. at 645,

736 S.E.2d at 236 (affiant had knowledge that defendant was traveling from New

York to “a specific location -- . . . ‘451 McKoy Street in Clinton, North Carolina’ -- . . .

for the purpose of selling drugs”); Crawford, 104 N.C. App. at 596, 410 S.E.2d at 501

(affidavit indicated that while suspect residence was under surveillance, it had

“traffic pattern . . . with visitors only staying in the apartment for about one minute”

and also during that time “five persons were arrested for possession within an hour

[of each other] . . . ‘as they exited [the suspect] residence’ ”); Byrd, 60 N.C. App. at

744, 300 S.E.2d at 18-19 (affiant successfully conducted controlled purchase of drugs

using informant at suspect residence).

 In State v. Mavrogianis, 57 N.C. App. 178, 291 S.E.2d 163 (1982), also cited by

the State, a connection between drugs and a student’s college dormitory room gave

rise to the inference that evidence of drug-related activity would be found in the

student’s car that was also parked on campus. In that case, the only circumstances

supporting the issuance of a search warrant were that “[t]he defendant was a student

living on campus [at North Carolina State University]. He possessed, actually or

constructively, a dormitory room and an automobile. There was reliable information

 - 15 -
 STATE V. ALLMAN

 Opinion of the Court

that he was dealing in marijuana; that marijuana was seen in his room and on his

person.” Id. at 181, 291 S.E.2d at 164.

 This Court found that these circumstances supported probable cause to search

the defendant’s automobile for drugs, even though the officers did not have any direct

information that drugs were located in the vehicle, because “[a] man of reasonable

caution would be warranted in believing that a university student living on campus,

who possessed and dealt in drugs, had drugs in both his dormitory room and his

automobile parked on campus, even though the drug was seen only in his dormitory

room.” Id. In reaching this conclusion, this Court highlighted the special

circumstance of selling drugs out of a college dormitory room: “A college student living

on campus and dealing in drugs would probably find the operation of the illicit trading

within the confines of a dormitory room . . . to be fraught with the danger of discovery

and apprehension. The student’s automobile would be a convenient instrumentality

for receiving, storing, and delivering his illicit merchandise.” Id.

 In other words, the fact that the defendant, a suspected drug dealer, had a

reduced expectation of privacy in his dorm room, provided a fair probability that

drugs would be found in the defendant’s automobile, the only other place that the

student had available to store drugs and the only place over which he had complete

control. Here, on the other hand, the circumstances provide no particular and

material connection, or inference of such a connection, between drug trafficking and

 - 16 -
 STATE V. ALLMAN

 Opinion of the Court

the Acres Drive residence. Unlike the unique circumstances in Mavrogianis of a

drug-dealing student, the State has made no showing that Mr. Black and Mr.

Whitehead were more likely to store their drugs in the Acres Drive residence than

somewhere else. The evidence of drug trafficking found at the traffic stop, and the

totality of other circumstances, do not directly implicate the Acres Drive residence as

a repository for evidence related to drug trafficking, any more than did the

circumstances set out in Campbell.

 Although the State also cites numerous federal decisions in support of its

argument, see, e.g., United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986)

(“In the case of drug dealers, evidence is likely to be found where the dealers live.”),

those cases, no matter how persuasive, cannot override controlling North Carolina

authority. To the extent that those federal cases conflict with our case law, we are

bound by decisions of our Supreme Court. See Dunn v. Pate, 106 N.C. App. 56, 60,

415 S.E.2d 102, 104 (1992) (“[T]his Court has no authority to overrule decisions of our

Supreme Court and we have the responsibility to follow those decisions[.]”), rev’d on

other grounds, 334 N.C. 115, 431 S.E.2d 178 (1993).

 Because we cannot meaningfully distinguish Campbell and because nothing in

McKinney, the Supreme Court’s most recent ruling, undermines the controlling

nature of Campbell, we are bound by that decision, especially in the absence of the

State citing any controlling decision with comparable circumstances. Based on

 - 17 -
 STATE V. ALLMAN

 Opinion of the Court

Campbell, we hold that the trial court did not err in concluding that the allegations

in the affidavit indicating that Mr. Black and Mr. Whitehead were involved in drug

dealing and engaged in behaviors common to drug dealers were not sufficient to

implicate any particular place where Mr. Black and Mr. Whitehead might have been

engaged in drug-related activity. Because the affidavit filed by Detective Bacon did

not reveal a sufficient nexus between Mr. Black’s and Mr. Whitehead’s drug-related

activity and the Acres Drive residence, we affirm the trial court’s order granting

defendant’s motion to suppress.

 AFFIRMED.

 Judge ELMORE concurs.

 Judge DILLON dissents in a separate opinion.

 - 18 -
 No. COA15-40 – STATE v. ALLMAN

 DILLON, Judge, dissenting.

 Because I believe that there was a substantial basis for the magistrate to

conclude that probable cause existed to search Defendant’s residence, I respectfully

dissent.

 In State v. McKinney, 368 N.C. 161, 775 S.E.2d 821 (2015), our Supreme Court

restated some basic principles regarding our role in reviewing the sufficiency of an

officer’s supporting affidavit to justify the issuance of a search warrant.

 The affidavit must detail “the facts and circumstances establishing
 probable cause to believe that items are in the places . . . to be searched.”
 McKinney, 368 N.C. at 164, 775 S.E.2d at 824 (citing N.C. Gen. Stat. §
 15A-244(3) (2013)).

 “A magistrate must make a practical, common-sense decision, based on
 the totality of the circumstances, whether there is a ‘fair probability’
 that contraband will be found in the place to be searched.” Id. (internal
 marks omitted).

 “This standard for determining probable cause is flexible” and permits
 “the magistrate to draw ‘reasonable inferences’ from the evidence in the
 affidavit[.]” Id.

 “Probable cause requires not certainty, but only a probability or
 substantial chance of criminal activity.” Id. at 165, 775 S.E.2d at 825
 (emphasis in original) (internal marks omitted).

 “The magistrate’s determination of probable cause is given ‘great
 deference’ and after-the-fact scrutiny should not take the form of a de
 novo review. Instead, a reviewing court is responsible for ensuring that
 the issuing magistrate had a substantial basis for concluding that
 probable cause existed.” Id. (internal marks omitted).

Based on these principles, I agree with the State that the trial court erred in granting

Defendant’s motion to suppress.
 STATE V. ALLMAN

 DILLON, J., dissenting

 Defendant lives in a residence in Wilmington with her boyfriend (Mr. Black)

and his half-brother (Mr. Whitehead). Defendant was arrested for drug-related

offenses after officers obtained a warrant to search the Wilmington residence. The

officers obtained the search warrant after discovering drugs and evidence of drug

dealing in a car driven by Mr. Black and in which Mr. Whitehead was the sole

passenger.

 The issue in the case is whether the facts in the officer’s affidavit were

sufficient to support the magistrate’s determination that there was a fair probability

that officers would find illegal drugs in the Wilmington residence. Our Supreme Court

held that an affidavit for a warrant to search a defendant’s residence was “fatally

defective” where it merely stated that the defendant was a known drug dealer and

attempted to sell narcotics to an undercover officer and otherwise contained no facts

or circumstances which “implicate[d] the premises to be searched.” State v. Campbell,

282 N.C. 125, 131, 191 S.E.2d 752, 756-57 (1972).

 In a decision this past summer, our Supreme Court reached a contrary result,

sustaining a warrant to search the defendant’s apartment where the supporting

affidavit stated that a visitor to the apartment was pulled over immediately after his

visit to the apartment and drugs and other evidence of drug dealing were found in

the visitor’s car. See McKinney, 368 N.C. at 162, 775 S.E.2d at 823. The Court stated

that the affidavit differed from the affidavit at issue in Campbell because it contained

 2
 STATE V. ALLMAN

 DILLON, J., dissenting

facts which created a “nexus between [the visitor’s] vehicle and [the] defendant’s

apartment[.]” Id. at 166, 775 S.E.2d at 825. Specifically, the affidavit stated that the

visitor’s cell phone contained a text exchange which occurred shortly before the visitor

arrived at the defendant’s apartment and which suggested the “preparation for and

negotiation of a drug transaction[.]” Id. The Court held that the case was

distinguishable from its 1972 Campbell decision because the affidavit in Campbell

“included no information indicating that drugs had been possessed in or sold from the

dwelling to be searched.” Id. at 166, 775 S.E.2d at 826.

 I respectfully disagree with the majority that the affidavit in the present case

“is materially indistinguishable from Campbell.” It is true that the affidavit, here,

did not contain the same type of information in the supporting affidavit in McKinney,

that is, information showing that the vehicle where the drugs were found had just

left the premises to be searched. However, unlike in Campbell, the officer’s affidavit

here did contain other information which implicated the Wilmington residence,

namely, that the occupants of the vehicle where illegal drugs were found repeatedly

lied about where they lived. For instance, the officer testified that prior to the drugs

being found in their vehicle, the brothers lied to the officers about their place of

residence, stating that they lived on Twin Oaks Drive in Castle Hayne, (located some

miles north of their actual residence in Wilmington). Also, after officers found 8.1

grams of marijuana, a large amount of cash, cell phone text messages indicative of a

 3
 STATE V. ALLMAN

 DILLON, J., dissenting

drug transaction, and other evidence of drug dealing, the brothers repeated the lie,

stating that they kept the drugs in their car so that their mother, who also lived at

the Castle Hayne residence, would not know about their involvement in illegal drugs.

Later, the mother informed an investigating officer that her sons did not live in Castle

Hayne but that her sons had lived at the Wilmington residence for three years and

only used the Castle Hayne residence to receive mail.

 In conclusion, the affidavit in the present case did not contain information that

anyone had seen illegal drugs at the Wilmington residence or that anyone found with

illegal drugs had just left the Wilmington residence. I believe, though, that the

information did, otherwise, implicate the Wilmington residence; namely, the repeated

lies the brothers told the officers about where they lived. Though this information

did not establish with certainty that drugs would be found at the Wilmington

residence, it contained facts and circumstances from which a magistrate, exercising

common sense, could conclude that there was a “probability or substantial chance”

that drugs or evidence of other criminal activity would be discovered at the

Wilmington residence. Accordingly, my vote would be to reverse the trial court’s

order suppressing the evidence discovered during the search of the Wilmington

residence. See, e.g., People v. Nunez, 242 Mich. App. 610, 614, 619 N.W.2d 550, 552

(2000) (Michigan court holding that the “[d]efendant’s denial that he lived at [a

certain] apartment, combined with the reasonable inference that drug traffickers

 4
 STATE V. ALLMAN

 DILLON, J., dissenting

often keep evidence of illicit activity in their homes, provided a substantial basis for

the magistrate’s finding of probable cause to search the apartment”).

 5