An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-514

Filed 18 March 2026

Vance County, No. 22CR308203-900

STATE OF NORTH CAROLINA

       v.

CORNELIUS OBRAI VANDERGRIFT

Appeal by Defendant from Judgment entered 29 October 2024 by Judge Cindy K. Sturges in Vance County Superior Court. Heard in the Court of Appeals 18 November 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General John A. Payne, for the State.*

> *Schiller & Schiller, PLLC, by David G. Schiller, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Cornelius Obrai Vandergrift (Defendant) appeals from the denial of his Motion to Suppress and a subsequent Judgment entered upon his guilty plea to Felony Trafficking of Heroin. The Record before us tends to reflect the following:

On 28 September 2022, Detective Kevin Allen of the Henderson Police Department (HPD) applied for a warrant to search a single-family home at 1141 Booker Street in Henderson (the Residence). The Application stated "[t]here is probable cause to believe that illegal drugs" and related items "are contained within [the Residence,]" which "are all used to further an ongoing enterprise of conducting illegal drug sales."

Det. Allen attached a Probable Cause Affidavit (Affidavit) to the Application. In the Affidavit, Det. Allen stated he had coordinated three controlled drug buys at the Residence during the weeks of 21 August 2022, 28 August 2022, and 25 September 2022. Det. Allen averred he had worked with two Confidential Sources of Information (CSIs), identified in the Affidavit as "CSI 1008" and "CSI 1210," to perform the controlled buys. Per Det. Allen, CSIs 1008 and 1210 both had "knowledge of how illegal narcotics are distributed and sold in the Henderson/Vance County area."

Det. Allen averred the first two controlled buys, during the weeks of 21 August 2022 and 28 August 2022, unfolded in similar fashion. Det. Allen and another officer[1] met with CSI 1008 and 1210, respectively, at predetermined locations. The officers searched the CSIs and found no contraband. The officers instructed the CSIs to make

---

[1] Det. Allen averred he was joined by one other officer for each controlled buy. For the controlled buys during the weeks of 21 August 2022 and 28 August 2022, Det. Allen averred he was joined by Sergeant Jeremy Wells. For the buy during the week of 25 September 2022, Det. Allen averred he was joined by a "Detective Hunter."

phone calls to a "subject who they referred to as 'Bubba' " to arrange heroin transactions.[2] "Bubba" instructed the CSIs to drive to the Residence. The CSIs stated they had previously met "Bubba" at the Residence, which was " 'Bubba['s]' house." The officers gave the CSIs money from the HPD "Special Funds Account" and directed them to "purchase a quantity of heroin." The CSIs then went to the Residence. The officers trailed them there. "Once at the location," the officers saw the CSIs "talking to a black male" at the Residence. They also observed a "blue in color Land Rover Range Rover" parked in the yard beside the Residence. After the CSIs completed the controlled buys, the officers instructed the CSIs to meet at a predetermined location and trailed the CSIs to that location. There, the officers again searched the CSIs and found no contraband other than the "heroin that was purchased," which the CSIs "provided" to Det. Allen.

According to the Affidavit, the third controlled buy, during the week of 25 September 2022, followed the same steps until the observation of the CSI at the Residence. This time, the officers trailed CSI 1008 to the Residence but did not see CSI 1008 talking to anyone. Instead, the officers saw CSI 1008 "walking from the [R]esidence[.]" Further, in addition to the blue Range Rover parked in the yard beside the Residence, the officers saw "a white Honda Accord" in the yard and a "blue in color Infinity [sic] SUV with large rims" in the driveway. As during the first two

---

[2] Det. Allen averred that a colleague, Lieutenant Woodleif, had "found that 'Bubba' is known to be a nickname for [Defendant]" through "previous investigations."

controlled buys, Det. Allen averred the officers trailed CSI 1008 to a predetermined location, searched CSI 1008, and found no contraband other than "the heroin that was purchased," which CSI 1008 gave to Det. Allen. Det. Allen averred he also "spoke with CSI 1008 about the transaction"; CSI 1008 reported "[CSI 1008] went to [the Residence] and met 'Bubba,'" bought the heroin, left the Residence, and "returned to the predetermined location." Per the Affidavit, CSI 1008 "was asked what cars 'Bubba' was known to drive, and [CSI 1008] stated a blue Range Rover, [a] white Honda Accord, and sometimes an Infinity [sic] SUV with rims."

Additionally, in the Affidavit's description of the third controlled buy, Det. Allen averred he had discovered an HPD report indicating a 911 call had been placed at the Residence in July, "and the 911 dispatcher stated [Defendant] was operating a blue in color Infinity [sic] SUV with rims was tearing [sic] the house up." This HPD report also stated "[Defendant] told officers on scene he lived at the [R]esidence and received mail there."

Det. Allen's 28 September 2022 Application requested a warrant to search the Residence, Defendant's person, the blue Range Rover, the blue Infiniti SUV, and the white Honda Accord. A magistrate issued the Search Warrant the same day. The face of the Search Warrant indicates it was executed on 30 September 2022 and returned to the trial court on 18 October 2022.

On 20 February 2023, Defendant was indicted for various drug offenses arising out of the 30 September 2022 search. Defendant filed a pretrial Motion to Suppress

evidence on 16 May 2024. The trial court held a suppression hearing on 31 July 2024. After hearing arguments from defense counsel and the State, the trial court denied Defendant's Motion. The trial court entered a written Order reflecting this ruling on 20 August 2024. The Order stated Defendant's "motion to suppress the evidence for lack of probable cause supporting the search warrant is denied."

On 29 October 2024, Defendant entered a guilty plea to one count of Felony Trafficking of Heroin and was sentenced to a term of 70 to 93 months imprisonment.[3] Pursuant to his plea agreement, Defendant reserved the right to appeal the trial court's denial of his Motion to Suppress. Defendant gave oral Notice of Appeal at the plea hearing.

## Issue

The sole issue on appeal is whether the trial court erred by denying Defendant's Motion to Suppress because the Search Warrant Application did not establish probable cause.

## Analysis

"Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether the trial court's findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." *State v. San*, 289 N.C. App. 693, 699, 891 S.E.2d 314, 319 (2023) (citation,

---

[3] Pursuant to the plea agreement, the trial court dismissed the other charges pending against Defendant.

quotation marks, and brackets omitted). "The trial court's conclusions of law, however, are reviewed de novo." *Id.* (citation omitted). "In reviewing the denial of a motion to suppress, we examine the evidence introduced at trial in the light most favorable to the State[.]" *State v. Moore*, 152 N.C. App. 156, 159, 566 S.E.2d 713, 715 (2002) (citations omitted).

"Pursuant to N.C. Gen. Stat. § 15A-244, an application for a search warrant must contain a statement of probable cause and 'allegations of fact supporting the statement of probable cause. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause. . . .' " *State v. Eddings*, 280 N.C. App. 204, 209, 866 S.E.2d 499, 503 (2021) (brackets omitted) (quoting N.C. Gen. Stat. § 15A-244(2)-(3) (2020)). A probable cause affidavit "must establish a nexus between the objects sought and the place to be searched. Usually this connection is made by showing that criminal activity actually occurred at the location to be searched or that the fruits of a crime that occurred elsewhere are observed at a certain place." *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990) (citations omitted).

"[W]hen addressing whether a search warrant is supported by probable cause, a reviewing court must consider the totality of the circumstances." *State v. Sinapi*, 359 N.C. 394, 398, 610 S.E.2d 362, 365 (2005) (citations and quotation marks omitted). In applying the totality of the circumstances test, our Supreme Court has stated an affidavit is sufficient to establish probable cause "if it supplies reasonable

cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender." *State v. Arrington*, 311 N.C. 633, 636, 319 S.E.2d 254, 256 (1984) (citation omitted). In the totality of the circumstances analysis,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983) (citation, quotation marks, and brackets omitted). *See also State v. Riggs*, 328 N.C. 213, 291, 400 S.E.2d 429, 433 (1991) (recognizing *Illinois v. Gates* "has been accepted by [the North Carolina Supreme Court] as setting the appropriate standard for showing probable cause under both the federal and state constitutions." (citation omitted)). On appellate review, "we are cognizant that 'great deference should be paid [to] a magistrate's determination of probable cause, and that after-the-fact scrutiny should not take the form of a *de novo* review.' " *Sinapi*, 359 N.C. at 398, 610 S.E.2d at 365 (quoting *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258).

In the case *sub judice*, Defendant first argues the Search Warrant Application was insufficient to establish probable cause because, in his Affidavit, Det. Allen did

not aver: (1) the heroin recovered from the CSIs after the controlled buys had been purchased at the Residence by the CSIs; or (2) that the officers had witnessed the CSIs buy the heroin at the Residence. The State contends Det. Allen need not have directly observed the drug sales to have developed probable cause to believe the sales happened at the Residence. The State therefore asks this Court to "reject Defendant's request to reverse the trial court's order to deny his Motion to Suppress." We agree with the State.

"Probable cause requires not certainty, but only '*a probability or substantial chance of criminal activity.*'" *State v. McKinney*, 368 N.C. 161, 165, 775 S.E.2d 821, 825 (2015) (emphasis in original) (quoting *Riggs*, 328 N.C. at 219, 400 S.E.2d at 433). In a probable cause affidavit, "'[a law enforcement] officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'" *State v. Clark*, 299 N.C. App. 445, 449-50, 918 S.E.2d 225, 230 (2025) (quoting *State v. Bone*, 354 N.C. 1, 10, 550 S.E.2d 482, 488 (2001)). We recognize minimal standards for probable cause affidavits, namely: "[p]robable cause cannot be shown 'by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based.'" *State v. Campbell*, 282 N.C. 125, 130-31, 191 S.E.2d 752, 756 (1972) (quoting *United States v. Ventresca*, 380 U.S. 102, 108-09, 85 S. Ct. 741, 746, 13 L. Ed. 2d 684, 689 (1965)). However, because

"affidavits attached to search warrants are normally drafted by nonlawyers in the . . . haste of a criminal investigation, courts are reluctant to scrutinize them in a hypertechnical, rather than a commonsense, manner." *McKinney*, 368 N.C. at 164, 775 S.E.2d at 824 (citation and quotation marks omitted). The magistrate views the evidence in an officer's probable cause affidavit "from the perspective of a police officer with the affiant's training and experience, and the commonsense judgments reached by officers in light of that training and specialized experience." *Id.* at 164-65, 775 S.E.2d at 825 (citations omitted). Again, on appellate review, our role is to ensure the magistrate had a substantial basis for concluding probable cause existed to justify the issuance of the search warrant. *See Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548.

Here, the Affidavit indicates Det. Allen acted with reasonable caution in coordinating the three controlled drug buys. First, Det. Allen set forth relevant examples of his law enforcement training, education, and qualifications. The Affidavit then described the controlled buys, providing, in pertinent part, the following details: (1) the officers met with the CSIs at predetermined locations and searched them to ensure they possessed no illegal contraband; (2) the officers instructed the CSIs to contact "Bubba," which the officers believed was a nickname for Defendant, to arrange heroin purchases at the Residence; (3) the officers gave HPD funds to the CSIs and instructed them to buy heroin at the Residence; (4) the officers trailed the CSIs to the Residence, where they witnessed them "talking to a black male" during

the first two buys and "walking from" the Residence during the third buy; (5) after trailing the CSIs to predetermined locations, the officers searched the CSIs again to confirm they had no contraband other than the heroin they had purchased; and (6) the officers recovered the heroin from the CSIs.

Although Det. Allen did not aver he had directly witnessed Defendant (or anyone else) sell heroin to the CSIs, he provided detailed information that corroborated a reasonable belief that, as planned, the CSIs had bought the heroin at the Residence. Specifically, the officers' tactics of searching the CSIs for contraband before and after the buys and trailing them to and from the Residence provided sufficient information for Det. Allen to form a "commonsense judgment" that the CSIs had purchased the heroin at the Residence. *See McKinney*, 368 N.C. at 164, 775 S.E.2d at 824. Thus, the Affidavit did not rely on "purely conclusory assertions"; instead, Det. Allen provided detailed factual allegations underlying his belief probable cause existed to justify the issuance of a search warrant.[4] *See Campbell*, 282 N.C. at 130-31, 191 S.E.2d at 756 (citation omitted).

---

[4] To the extent Defendant argues the Affidavit was insufficient to demonstrate probable cause because Det. Allen did not specifically state the heroin recovered had been purchased by the CSIs at the Residence, we note "a magistrate is entitled to draw reasonable inferences from the material supplied to him by an applicant for a warrant." *Sinapi*, 359 N.C. at 399, 610 S.E.2d at 365 (citing *Riggs*, 328 N.C. at 221, 400 S.E.2d at 434). Here, the reviewing magistrate could reasonably infer that when Det. Allen averred the CSIs "provided me with the heroin that was purchased," Det. Allen was referring to the heroin the CSIs purchased at the Residence in accordance with the plan for the controlled buys.

Additionally, information in the Affidavit linked Defendant to the Residence. Per Det. Allen, the CSIs told officers they had "previously met 'Bubba' " at the Residence, which was " 'Bubba['s]' house." Det. Allen averred "Bubba" was a known nickname for Defendant based on information a colleague, Lt. Woodleif, had learned in prior investigations.[5] Moreover, Det. Allen averred he had found a police report indicating HPD had previously visited the Residence after a 911 call, and Defendant told officers on scene at the Residence that he lived and received mail there. Thus, the Affidavit established a "nexus" between Defendant, the Residence, and the heroin recovered by HPD from the CSIs after the controlled buys. *See McCoy*, 100 N.C. App. at 576, 397 S.E.2d at 357. This nexus, in turn, supported both the trial court's Conclusion the Affidavit established probable cause and its resulting denial of Defendant's Motion to Suppress.

Defendant also challenges the "lack of any assertion of the CSIs' credibility" in the Affidavit. Defendant contends Det. Allen's averments about the CSIs' "knowledge of how illegal narcotics are distributed and sold in the Henderson/Vance County area" were insufficient to establish the reliability of the CSIs as informants, which in turn

---

[5] A law enforcement officer may rely on information in the collective knowledge of all officers to establish probable cause. *State v. Bowman*, 193 N.C. App. 104, 109, 666 S.E.2d 831, 835 (2008). Thus, in his Affidavit, Det. Allen was entitled to rely on Lt. Woodlief's information that "Bubba" was a known nickname for Defendant to support Det. Allen's claim probable cause existed to issue a search warrant

undermines the trial court's Conclusion the Affidavit established probable cause to issue the Search Warrant.

For this argument, Defendant cites *State v. Riggs*, 328 N.C. 213, 400 S.E.2d 429 (1991). Defendant highlights our Supreme Court's conclusion in *Riggs* that a police officer affiant's statement about a CSI who "had made two prior controlled purchases of drugs and also previously had given accurate information" to police that led to a drug-related arrest was "evidence [that] established that [CSI's] reliability." *Id.* at 218, 400 S.E.2d at 432. Defendant points out that here, unlike in *Riggs*, Det. Allen did not aver that either CSI 1008 or 1210 had previously given accurate information to law enforcement. Instead, Defendant notes Det. Allen only stated the CSIs had knowledge of the local drug trade, which he argues was insufficient to support a conclusion that the CSIs were credible and reliable.

Defendant's argument is misplaced. *Riggs* expressly stated that a "track record" of accurate tips is not required to demonstrate a CSI's reliability for the purpose of establishing probable cause. *Id.* at 219, 400 S.E.2d at 433. To the contrary, our Supreme Court clarified "the State is not limited to certain narrowly defined categories or quantities of information" when it seeks to demonstrate the reliability of factual allegations in a search warrant application. *Id.*

Thus, *State v. Riggs* does not support Defendant's position. Under *Riggs*, Det. Allen was not required to provide information showing the CSIs had a track record of accurate tips to law enforcement. *See id.* Instead, the Affidavit established the CSIs'

credibility by recounting their participation in three similar controlled drug buys coordinated by an experienced detective. For example, the Affidavit described investigative safeguards that helped ensure the CSIs provided reliable information and evidence: searches of the CSIs for contraband before and after they visited the Residence; instructions to the CSIs to contact "Bubba" to arrange heroin transactions; trailing the CSIs to and from the Residence to monitor their actions; and recovering the heroin from the CSIs soon after the controlled buys.

Moreover, Det. Allen's averments about the CSIs' knowledge of the local drug trade—which appear to have been aimed at establishing the CSIs' reliability, veracity, and basis of knowledge for the purpose of providing information for this drug investigation—were reinforced by details about the CSIs' actions during the controlled buys. The Affidavit described the CSIs' reports of having previously met "Bubba" at the Residence. Per Det. Allen, the CSIs also informed the officers that the Residence was " 'Bubba's' house." Further, the Affidavit described the CSIs' ability to contact "Bubba" by phone and set up meetings at the Residence to buy heroin on short notice. Thus, while Defendant contends "knowing where in town to purchase narcotics, standing alone, does not bolster a person's credibility[,]" the Affidavit's descriptions of the CSIs' conduct during the controlled buys supported Det. Allen's assertions about their knowledge of the local drug trade and assisted in demonstrating the CSIs' credibility, reliability, veracity, and basis of knowledge for

the purpose of the magistrate's probable cause determination. *See Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548.

In sum, the Affidavit describes an experienced drug investigator's coordination of three controlled drug buys, which featured safeguards aimed at ensuring the CSIs acted consistently and that the heroin recovered by HPD had indeed been purchased at the Residence. Thus, the factual allegations in the probable cause Affidavit demonstrated Det. Allen used his training, experience, and the evidence recovered during the controlled buys to form the commonsense judgment probable cause existed to justify the issuance of a search warrant. *See McKinney*, 368 N.C. at 164-65, 775 S.E.2d at 825. Therefore, the totality of the circumstances provided the magistrate with a substantial basis to reach the conclusion there was probable cause to believe contraband was present in the places to be searched. *See Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548. Consequently, because the Search Warrant Application was supported by probable cause and the magistrate properly issued the Search Warrant, the trial court did not err by denying Defendant's Motion to Suppress.

## Conclusion

Accordingly, for the foregoing reasons, we affirm both the trial court's Order denying the Motion to Suppress and the Judgment entered upon Defendant's guilty plea.

AFFIRMED.

Judges ARROWOOD and COLLINS concur.

Report per Rule 30(e).