GEER, Judge.
*686 The State appeals from an order granting defendant Brittany Allman's motion to suppress evidence of drug-related activity seized following the execution of a search warrant at her residence. On appeal, the State argues that the search warrant application revealed circumstances-including the fact that two other residents of the house were engaged in drug dealing and had lied to officers about where they lived-that gave rise to probable cause to believe evidence of drug-related activity would be found in defendant's residence. However, we conclude that these circumstances, along with others in the search warrant affidavit, amount at most to circumstances that our case law has held to be insufficient to establish probable cause that evidence of illegal activity exists at the location identified in the search warrant application. We, therefore, affirm the trial court's order granting defendant's motion to suppress.
Facts
Half-brothers Jeremy Lee Black and Sean Alden Whitehead lived at 4844 Acres Drive ("the Acres Drive residence") in Wilmington, North Carolina together with Logan McDonald and defendant, who was Mr. Black's girlfriend. Officers obtained a search warrant for the Acres Drive residence to search for evidence relating to the sale of controlled substances. Officers conducted the search of the Acres Drive residence while defendant was present and found various controlled substances and paraphernalia. Defendant was then arrested.
On 19 March 2012, defendant was indicted for possession of marijuana, possession of a schedule I controlled substance, manufacturing a schedule I controlled substance, possession with intent to sell or deliver marijuana, *313 maintaining a vehicle or dwelling for the sale or distribution *687 of a controlled substance, and possession of drug paraphernalia. On 2 June 2014, defendant filed a motion to suppress the evidence obtained in the search of the Acres Drive residence, arguing that the search warrant did not allege sufficient facts to support probable cause that evidence of drug-related crimes would be found at the Acres Drive residence and, therefore, violated N.C. Gen.Stat. § 15A-244 (2013). On 2 October 2014, the trial court entered an order granting defendant's motion to suppress.
The application for a search warrant was supported by the affidavit of Detective Anthony Bacon of the Vice and Narcotics Unit of the New Hanover County Sheriff's Office. After Detective Bacon set out in the affidavit his experience and certain "common characteristics" that "people who use illegal controlled substances share," Detective Bacon then made the following factual assertions to support a search of the Acres Drive residence.[1] On 21 January 2012, Agent Joe Cherry of the Brunswick County Sheriff's Office called Detective Bacon and told him that he had conducted a vehicle stop on Highway 74/76 eastbound just before the New Hanover County Line. Agent Cherry identified the driver as Mr. Black and the passenger as Mr. Whitehead. According to Agent Cherry, when he asked Mr. Whitehead about his whereabouts prior to the traffic stop, Mr. Whitehead told him that Mr. Black and he were half-brothers, that they left their residence at 30 Twin Oaks Drive in Castle Hayne, N.C., and that they then visited a friend in Brunswick County. Mr. Whitehead told Agent Cherry that they were on their way back to 30 Twin Oaks Drive.
Agent Cherry further told Detective Bacon that, during the roadside interview, he called for a K-9 unit and the dog alerted to the presence of controlled substances during an exterior "sniff." Agent Cherry said he then searched the car and discovered 8.1 ounces of marijuana packaged in a Ziploc bag, which was inside a vacuum-sealed bag, which in turn was inside a manila envelope. Agent Cherry said he also found over $1,600.00 in cash. Agent Cherry reported to Detective Bacon that Mr. Whitehead told Agent Cherry that he kept some marijuana in his vehicle at 30 Twin Oaks Drive-Mr. Whitehead claimed that he kept the marijuana in the vehicle so that his mother would not know about it. Agent Cherry also said that Mr. Whitehead owned two cell phones and one of those phones contained text messages related to the sale of marijuana.
*688 Detective Bacon then described Mr. Whitehead's prior record of being charged with trafficking marijuana and sale and distribution of marijuana and of having been convicted of possession with intent to sell and deliver marijuana. The affidavit noted that Mr. Black had been charged with cocaine distribution and possession of marijuana in the State of Florida, while, in North Carolina, Mr. Black had pled guilty to first degree burglary.
Detective Bacon asserted that according to Division of Motor Vehicles records, both Mr. Black and Mr. Whitehead listed their home address at 30 Twin Oaks Drive. The car Mr. Black was driving when stopped by Agent Cherry was registered to 30 Twin Oaks Drive. Detective Bacon obtained a search warrant for 30 Twin Oaks Drive, but discovered, when executing the warrant, that Mr. Black and Mr. Whitehead did not live there. Detective Bacon found no evidence of Mr. Black's or Mr. Whitehead's belongings at 30 Twin Oaks Drive. Instead, Mr. Black's and Mr. Whitehead's mother, Elsie Black, and their stepfather lived there. Ms. Black said that her sons lived at "4814 Acres Drive" and described the residence to Detective Bacon. She also said that there should be an old red truck and an old white truck at the house. According to Ms. Black, her sons had a roommate named Logan McDonald. She said that her sons used her address as a mailing address, but had been living on Acres Drive for approximately three years.
*314 Another detective went to 4814 Acres Drive and found the property matched the description given by Ms. Black. The detective checked the registration of the old red truck and the old white truck, and one was registered to Mr. Black and the other was registered to Mr. McDonald.
Finally, Detective Bacon asserted that he "knows through training and experience, subjects who deal in illegal controlled substances often use different mailing addresses and lie to law enforcement about their home address to conceal their illegal activities."
The trial court found that when Detective Bacon served the search warrant on the Acres Drive house, the door was opened by defendant and Mr. McDonald. Once inside, the detectives found various amounts of marijuana in the living room, and a search of defendant's room yielded a shotgun. The detectives also located a wall safe behind a tapestry in defendant's room, although defendant did not know the safe was there and could not provide the combination. The detectives eventually opened the safe and found syringes filled with a liquid substance believed to be psilocybin mushrooms.
*689 The trial court further found that prior to applying for the search warrant, Detective Bacon had not conducted surveillance or an investigation of the Acres Drive residence to determine whether probable cause existed to believe that evidence of violations of the North Carolina Controlled Substances Act had occurred or were occurring there. Also, prior to submitting the search warrant application, Detective Bacon "had not received any information that there would be controlled substances found, kept, sold, manufactured or otherwise located at the residence of 4844 College Acres Drive [in] Wilmington, NC." Further, Detective Bacon's supporting affidavit attached to the warrant application contained no information that the Acres Drive residence would contain evidence constituting a violation of the North Carolina Controlled Substances Act, and, consequently, "did not contain any nexus between the controlled substances sought to be found and the residence located at 4844 Acres Drive[,] Wilmington, NC."
Based on these findings, the trial court made the following conclusions of law. Because, at the time he applied for the search warrant, Detective Bacon "did not have any information that controlled substances were likely to be found on the premises[,]" and he "did not allege in his affidavit ... that anyone had seen controlled substances at the residence or that any controlled substances were being sold, kept or manufactured" at the Acres Drive residence, the facts alleged in Detective Bacon's affidavit were insufficient, under the totality of the circumstances, to support a finding of probable cause. Therefore, the trial court concluded, the evidence taken from defendant "was in violation of her rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the parallel provisions of the Constitution of the State of North Carolina. In addition, the evidence was obtained in substantial violation of the provisions of Chapter 15A of the North Carolina General Statutes."
Based on these conclusions of law, the trial court ordered the evidence obtained against defendant from the Acres Drive residence to be suppressed. On 14 October 2014, the State gave notice of appeal from the order granting defendant's motion to suppress, certifying that the appeal was not taken for the purpose of delay pursuant to N.C. Gen.Stat. § 15A-979(c) (2013).
Standard of Review
In arguing that the trial court should have denied the motion to suppress, the State argues that Detective Bacon's affidavit alleged sufficient *690 facts to support the existence of probable cause to search the Acres Drive residence.
Our standard of review of an order granting or denying a motion to suppress is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law. [A] trial court's conclusions of law regarding whether the officer had reasonable suspicion [or probable cause] to detain a defendant is reviewable *315 de novo. [T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.
State v. Hudgins, 195 N.C.App. 430, 432, 672 S.E.2d 717, 718 (2009) (internal citations and quotation marks omitted).
Discussion
The State first challenges the trial court's findings of fact that Detective Bacon did not conduct surveillance on the Acres Drive residence to determine if there was probable cause to search that location; that Detective Bacon had not received any information that there would be controlled substances at the Acres Drive residence; and that Detective Bacon's affidavit did not have any information that the Acres Drive residence would contain evidence constituting a violation of the North Carolina Controlled Substances Act. These findings of fact simply identify what the trial court deemed to be lacking in Detective Bacon's affidavit. They show the trial court's reasoning in determining-as set out in the final finding of fact challenged by the State-that Detective Bacon's affidavit "did not contain any nexus between the controlled substances sought to be found [at] the residence located at 4844 Acres Drive[,] Wilmington, NC."
We agree with the State that this last finding is more properly characterized as a conclusion of law. See State v. Oates, 224 N.C.App. 634, 644, 736 S.E.2d 228, 235 (2012) (treating trial court's determination of existence of "sufficient nexus between the objects sought and the place to be searched" as conclusion of law), appeal dismissed, 366 N.C. 585, 740 S.E.2d 473 (2013). However, the trial court's mislabeling of that conclusion of law as a finding of fact is immaterial to the question whether the trial court properly concluded that Detective Bacon's affidavit was insufficient to support issuance of the search warrant.
*691 To perform a search in North Carolina, under article I, section 20 of the State Constitution, an officer must have " 'probable cause to believe that a crime has been [or is being] committed and that evidence of it can likely be found at the described locus at the time of the search. ' " State v. Smith, 124 N.C.App. 565, 571, 478 S.E.2d 237, 241 (1996) (quoting United States v. Ricciardelli, 998 F.2d 8, 10 (1st Cir.1993) ). Additionally, a search warrant must comply with N.C. Gen.Stat. § 15A-244. State v. Hyleman, 324 N.C. 506, 509, 379 S.E.2d 830, 832 (1989).
That statute provides,
Each application for a search warrant must be made in writing upon oath or affirmation. All applications must contain:
(1) The name and title of the applicant; and
(2) A statement that there is probable cause to believe that items subject to seizure under G.S. 15A-242 may be found in or upon a designated or described place, vehicle, or person; and
(3) Allegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched; and
(4) A request that the court issue a search warrant directing a search for and the seizure of the items in question.
N.C. Gen.Stat. § 15A-244 (emphasis added).
Our Supreme Court has explained that "probable cause cannot be shown by conclusory affidavits stating only the belief of the affiant or an informer that probable cause exists to issue the warrant. Recital of some of the circumstances underlying this belief is essential." Hyleman, 324 N.C. at 509, 379 S.E.2d at 832 (internal citation omitted). While our case law supports the premise that " 'first-hand information of contraband seen in one location will sustain a finding to search a second location[,]' " Oates, 224 N.C.App. at 644, 736 S.E.2d at 235 (quoting State v. McCoy, 100 N.C.App. 574, 577, 397 S.E.2d 355, 357 (1990) ), " 'evidence obtained in one location cannot provide probable cause for the search of another location when the evidence offered does not implicate the premises to *692 be searched[,]' " id. (quoting *316 State v. Washburn, 201 N.C.App. 93, 101, 685 S.E.2d 555, 561 (2009) ).
This Court has held, in applying N.C. Gen.Stat. § 15A-244(3), that "[t]he affidavits must establish a nexus between the objects sought and the place to be searched." McCoy, 100 N.C.App. at 576, 397 S.E.2d at 357. "Usually this connection is made by showing that criminal activity actually occurred at the location to be searched or that the fruits of a crime that occurred elsewhere are observed at a certain place." Id. A search warrant applicant need not have direct information connecting a particular place to be searched with fruits of a crime. Id. However, " '[d]ifficult problems can arise ... where such direct information ... is not available and it must be determined what reasonable inferences may be entertained concerning the likely location of those items.' " Id. (quoting Wayne R. LaFave, Search and Seizure, § 3.7(d) at 103 (2d ed.1987) ).
In interpreting the requirement of a "nexus," our Supreme Court, in State v. Campbell, 282 N.C. 125, 130, 191 S.E.2d 752, 756 (1972), held that an affidavit was insufficient to establish probable cause when the affidavit stated only that (1) the officer had arrest warrants charging the defendant and two other residents of the premises with the sale and possession of narcotics; (2) the three residents had all sold narcotics to an SBI agent and, based on the officer's personal knowledge and interviews with informants and local police officers, were actively involved in drug sales, and (3) the defendant leased the premises. The Court observed that "[n]owhere in the affidavit is there any statement that narcotic drugs were ever possessed or sold in or about the dwelling to be searched." Id. at 131, 191 S.E.2d at 757. Further, "[n]owhere in the affidavit are any underlying circumstances detailed from which the magistrate could reasonably conclude that the proposed search would reveal the presence of illegal drugs in the dwelling." Id. The Court concluded that an inference that narcotic drugs were illegally possessed on the premises at issue did "not reasonably arise from the facts alleged." Id.
This case is materially indistinguishable from Campbell. Nothing in Detective Bacon's application and affidavit indicated that he observed or received information that drugs were possessed or sold at the Acres Drive residence. The State argues, however, that such an inference arose as a natural and reasonable inference from circumstances indicating that Mr. Black and Mr. Whitehead were engaged in drug trafficking. The State points to Detective Bacon's allegations in the warrant affidavit that he learned Mr. Black and Mr. Whitehead had been previously convicted of crimes involving marijuana and that Agent Cherry found marijuana, *693 cash, and a cell phone with messages consistent with sales of marijuana in Mr. Whitehead's possession during the traffic stop. These facts were relevant to whether Mr. Black and Mr. Whitehead were engaged in drug dealing, but the Supreme Court in Campbell held that information that a defendant was an active drug dealer was not sufficient, without more, to support a search of the dealer's residence.
Indeed, our Supreme Court recently described Campbell as controlling when "the affidavit ... included no information indicating that drugs had been possessed in or sold from the dwelling to be searched." State v. McKinney, 368 N.C. 161, 166, 775 S.E.2d 821, 826 (2015). By contrast, in McKinney, the affidavit was found sufficient when it alleged that (1) a citizen complained about heavy traffic in and out of the defendant's apartment with visitors making abbreviated stays; (2) officers conducted surveillance of the apartment and saw a Pontiac arrive and the driver enter the apartment, emerge six minutes later, and drive off; (3) officers stopped the Pontiac for a traffic violation and the driver had $4,258.00 in cash and a gallon-size plastic bag containing marijuana remnants; and (4) the driver's cell phone had a series of text messages sent and received just before the driver's arrival at the defendant's apartment, suggesting that the driver had just completed a delivery of drugs to the apartment. Id. at 162, 166, 775 S.E.2d at 823, 825. The Court emphasized: "[T]he information available to the officer and provided to the magistrate at the time the search warrant was requested and issued sufficiently indicated that the transaction *317 adumbrated in the texts was consummated moments later in defendant's apartment. Thus, this case is distinguishable from Campbell ...." Id. at 166, 775 S.E.2d at 825 (emphasis added).
This case resembles Campbell and not McKinney. The affidavit here contained no allegations evidencing the probable presence of drugs at the Acres Drive house. No one observed any activity suggestive of drug trafficking or usage at the house, and nothing connected the Acres Drive house with the cash, marijuana, and texts suggestive of drug sales uncovered during the traffic stop. The State has cited no opinions of this Court or the Supreme Court indicating that an affidavit comparable to the one in this case is sufficient to support a search warrant. While the State points to the allegation that Mr. Black and Mr. Whitehead lied about their residence, that lie, while perhaps suggestive that drugs might be present at their actual residence, does not make the drugs' presence probable, especially given the affidavit's allegation that Mr. Whitehead claimed he kept his drugs in his vehicle.
Unlike this case, in the cases relied upon by the State- State v. Sinapi, 359 N.C. 394, 610 S.E.2d 362 (2005), *694 State v. Riggs, 328 N.C. 213, 400 S.E.2d 429 (1991), Oates, State v. Crawford, 104 N.C.App. 591, 410 S.E.2d 499 (1991), and State v. Byrd, 60 N.C.App. 740, 300 S.E.2d 16 (1983) -the warrants authorizing searches of the suspect residences were upheld because officers had discovered some specific and material connection between drug activity and the place to be searched. See Sinapi, 359 N.C. at 395, 610 S.E.2d at 363 (affiant performed inventory of trash bag located on curb of suspect residence that revealed eight marijuana plants); Riggs, 328 N.C. at 215-16, 400 S.E.2d at 431 (affiant successfully coordinated controlled purchase of drugs using confidential source at suspect residence); Oates, 224 N.C.App. at 645, 736 S.E.2d at 236 (affiant had knowledge that defendant was traveling from New York to "a specific location-... '451 McKoy Street in Clinton, North Carolina'-... for the purpose of selling drugs"); Crawford, 104 N.C.App. at 596, 410 S.E.2d at 501 (affidavit indicated that while suspect residence was under surveillance, it had "traffic pattern ... with visitors only staying in the apartment for about one minute" and also during that time "five persons were arrested for possession within an hour [of each other] ... 'as they exited [the suspect] residence' "); Byrd, 60 N.C.App. at 744, 300 S.E.2d at 18-19 (affiant successfully conducted controlled purchase of drugs using informant at suspect residence).
In State v. Mavrogianis, 57 N.C.App. 178, 291 S.E.2d 163 (1982), also cited by the State, a connection between drugs and a student's college dormitory room gave rise to the inference that evidence of drug-related activity would be found in the student's car that was also parked on campus. In that case, the only circumstances supporting the issuance of a search warrant were that "[t]he defendant was a student living on campus [at North Carolina State University]. He possessed, actually or constructively, a dormitory room and an automobile. There was reliable information that he was dealing in marijuana; that marijuana was seen in his room and on his person." Id. at 181, 291 S.E.2d at 164.
This Court found that these circumstances supported probable cause to search the defendant's automobile for drugs, even though the officers did not have any direct information that drugs were located in the vehicle, because "[a] man of reasonable caution would be warranted in believing that a university student living on campus, who possessed and dealt in drugs, had drugs in both his dormitory room and his automobile parked on campus, even though the drug was seen only in his dormitory room." Id. In reaching this conclusion, this Court highlighted the special circumstance of selling drugs out of a college dormitory room: "A college student living on campus and dealing in drugs would probably find the operation of the illicit trading within the confines of a dormitory room *695 ... to be fraught with the danger of discovery and apprehension. The student's automobile would be a convenient instrumentality for receiving, storing, and delivering his illicit merchandise." Id.
In other words, the fact that the defendant, a suspected drug dealer, had a reduced *318 expectation of privacy in his dorm room, provided a fair probability that drugs would be found in the defendant's automobile, the only other place that the student had available to store drugs and the only place over which he had complete control. Here, on the other hand, the circumstances provide no particular and material connection, or inference of such a connection, between drug trafficking and the Acres Drive residence. Unlike the unique circumstances in Mavrogianis of a drug-dealing student, the State has made no showing that Mr. Black and Mr. Whitehead were more likely to store their drugs in the Acres Drive residence than somewhere else. The evidence of drug trafficking found at the traffic stop, and the totality of other circumstances, do not directly implicate the Acres Drive residence as a repository for evidence related to drug trafficking, any more than did the circumstances set out in Campbell.
Although the State also cites numerous federal decisions in support of its argument, see, e.g., United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) ("In the case of drug dealers, evidence is likely to be found where the dealers live."), those cases, no matter how persuasive, cannot override controlling North Carolina authority. To the extent that those federal cases conflict with our case law, we are bound by decisions of our Supreme Court. See Dunn v. Pate, 106 N.C.App. 56, 60, 415 S.E.2d 102, 104 (1992) ("[T]his Court has no authority to overrule decisions of our Supreme Court and we have the responsibility to follow those decisions[.]"), rev'd on other grounds, 334 N.C. 115, 431 S.E.2d 178 (1993).
Because we cannot meaningfully distinguish Campbell and because nothing in McKinney, the Supreme Court's most recent ruling, undermines the controlling nature of Campbell, we are bound by that decision, especially in the absence of the State citing any controlling decision with comparable circumstances. Based on Campbell, we hold that the trial court did not err in concluding that the allegations in the affidavit indicating that Mr. Black and Mr. Whitehead were involved in drug dealing and engaged in behaviors common to drug dealers were not sufficient to implicate any particular place where Mr. Black and Mr. Whitehead might have been engaged in drug-related activity. Because the affidavit filed by Detective Bacon did not reveal a sufficient nexus between Mr. Black's and Mr. Whitehead's drug-related activity and the Acres Drive residence, we affirm the trial court's order granting defendant's motion to suppress.
*696 AFFIRMED.
Judge ELMORE concurs.
Judge DILLON dissents in a separate opinion.

The search warrant identified the residence to be searched as 4814 Acres Drive, while the residence actually searched was at 4844 Acres Drive. Defendant did not make any arguments below pertaining to the discrepancy between the address listed in the application and the address actually searched, and that discrepancy is not an issue on appeal.