IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-876

 Filed: 4 October 2016

Alexander County, Nos. 13 CRS 50158-61, 12 CRS 52344-46

STATE OF NORTH CAROLINA,

 v.

ADAM ROBERT JACKSON, Defendant.

 Appeal by Defendant from judgment entered 11 February 2015 by Judge

Joseph N. Crosswhite in Alexander County Superior Court. Heard in the Court of

Appeals 14 January 2016.

 Attorney General Roy Cooper, by Assistant Attorney General Joseph A.
 Newsome, for the State.

 Gerding Blass, PLLC, by Danielle Blass, for Defendant-Appellant.

 INMAN, Judge.

 Adam Robert Jackson (“Defendant”) appeals from a Judgment Suspending

Sentence following his plea of no contest to one count of manufacturing marijuana.

On appeal, Defendant argues that the trial court erred in denying his motion to

suppress evidence obtained pursuant to a search warrant because the warrant

application was insufficient to support the magistrate’s finding of probable cause.
 STATE V. JACKSON

 Opinion of the Court

After careful review, we hold that the warrant application provided a substantial

basis to support the magistrate’s finding of probable cause. Accordingly, we affirm.

 I. Factual & Procedural Background

 On 30 January 2013, Detective Jessica Jurney and another officer with the

Narcotics Division of the Iredell County Sheriff’s Office conducted a knock-and-talk

at the home of a person they had never met. The officers indicated to the person that

she could face criminal charges based on her1 possession of marijuana. The person

(“confidential informant” or “informant”) agreed to provide information regarding

where she obtained the marijuana. The informant told Detective Jurney that she had

purchased marijuana from Defendant, a male in his early 20s, “with long dark hair.”

 The informant provided Defendant’s name, stated that she had purchased

marijuana at Defendant’s residence on multiple occasions, and noted that she had

most recently purchased marijuana from Defendant at his residence two days earlier.

The informant explained that during her most recent purchase, Defendant asked her

to wait for him in a front room and went into a bedroom located on the right side of

his house. The informant then heard the sound of a key turning in a lock. Defendant

returned with a mason jar containing marijuana and sold a portion of it to the

informant.

 1 Defendant’s brief notes that the suppression hearing seemed to indicate that the confidential
informant was female. For this reason, and for ease of reading, we will refer to her as such in this
opinion.

 -2-
 STATE V. JACKSON

 Opinion of the Court

 The informant told Detective Jurney that Defendant’s residence was located

off Old Mountain Road in a wooded area across from a development called “Old

Mountain Village.” The informant described Defendant’s home as a “modular

home/trailer.” The informant then led Detective Jurney to a driveway with a mailbox

marker that read 2099 Old Mountain Road. The informant explained to Detective

Jurney that the driveway forked in two separate directions at the end and stated that

Defendant’s residence was located on the left side of the fork. Subsequently, Captain

Clarence Harris of the Iredell County Sheriff’s Office drove to the same location and

confirmed that a light-colored modular home was located on the left side of a fork in

the driveway.

 Detective Jurney searched the CJ LEADS database, a database wherein law

enforcement officers can refer to DMV information or criminal charges, for “Adam

Jackson.” The search revealed that a person named “Adam Robert Jackson” resided

at 2099 Old Mountain Road in Hiddenite, North Carolina, and was twenty-two years

old. In the photograph, Adam Jackson had shoulder length brown hair and brown

eyes.

 On 31 January 2013, Detective Jurney contacted Deputy Kelly Ward of the

Narcotics Division of the Alexander County Sheriff’s Office. Because the address was

located in Alexander County, Detective Jurney notified Deputy Ward of all of the

information that had been relayed to her by the informant. On that same day,

 -3-
 STATE V. JACKSON

 Opinion of the Court

Detective Jurney and Deputy Ward applied to the Alexander County Magistrate for

a search warrant for Defendant’s residence. As part of the warrant application,

Deputy Ward submitted an affidavit in which he attached a statement by Detective

Jurney detailing the information that the confidential informant had relayed to her.

Deputy Ward’s affidavit stated that in addition to receiving information from

Detective Jurney, he had “received information on several occasions throughout the

past year from concerned citizens in the area of the premise to be searched, about

drug traffic mainly [m]arijuana at the premise to be searched.” Deputy Ward also

noted that he had searched Defendant’s criminal history and discovered that

Defendant was charged with possession of marijuana in December 20122 in

Alexander County.

 An Alexander County Magistrate issued a search warrant for Defendant’s

residence, which law enforcement officers executed the same day. The search

revealed “indoor grow equipment,” marijuana, and “plants,” which officers seized.

 On 24 June 2013, Defendant was indicted for possession with intent to

manufacture, sell, and deliver marijuana; manufacturing marijuana; felony

possession of a Schedule VI controlled substance; and maintaining a

 2 Deputy Ward’s affidavit indicates that Defendant was charged with possession of marijuana
on 22 December 2013 – nearly a year in the future from the date of the warrant application. However,
at the hearing on Defendant’s motion to suppress, Deputy Ward testified that this was a clerical error
in the application, and that the information he obtained reflected that Defendant had been charged in
December 2012. Defendant’s counsel acknowledged the charge and the correct date.

 -4-
 STATE V. JACKSON

 Opinion of the Court

vehicle/dwelling/place for a controlled substance.3 On 19 November 2013, Defendant

filed a motion to suppress evidence discovered as a result of the search of his

residence.

 Defendant’s motion was heard on 9 February 2015 by Judge Joseph N.

Crosswhite in Alexander County Superior Court. Deputy Ward and Detective Jurney

testified at the hearing. At the conclusion of the hearing, Judge Crosswhite denied

Defendant’s motion to suppress, and, on 13 March 2015, entered a written order to

the same effect.

 Two days after the suppression hearing, on 11 February 2015, Defendant pled

no contest to one count of driving while impaired and one count of manufacturing

marijuana. Defendant was sentenced to 12 months imprisonment for the driving

while impaired charge, and 6–17 months imprisonment for the manufacturing

marijuana charge; however, both sentences were suspended for 30 months of

supervised probation, subject to certain terms and conditions.

 II. Petition for Writ of Certiorari

 We initially address this Court’s jurisdiction over this appeal. On 24 February

2015, Defendant filed a Notice of Appeal stating that he “appeals the Order of the

Superior Court denying Defendant’s motion to suppress all physical evidence seized

 3 On 24 June 2013, Defendant was also indicted for driving while impaired; possession with
intent to manufacture, sell, and deliver marijuana; simple possession of a Schedule VI controlled
substance; and possession of drug paraphernalia. These charges stem from an incident occurring 22
December 2012.

 -5-
 STATE V. JACKSON

 Opinion of the Court

by law enforcement officers during the search of [] Defendant’s residence on the date

of the alleged offense, entered in this action.” The Notice of Appeal further specified

that “[t]he right to this appeal was specifically reserved as part of Defendant’s guilty

plea.”

 This Court has held that:

 [I]n order to properly appeal the denial of a motion to
 suppress after a guilty plea, a defendant must take two
 steps: (1) he must, prior to finalization of the guilty plea,
 provide the trial court and the prosecutor with notice of his
 intent to appeal the motion to suppress order, and (2) he
 must timely and properly appeal from the final judgment.

State v. Cottrell, 234 N.C. App. 736, 739–40, 760 S.E.2d 274, 277 (2014); see also N.C.

Gen. Stat. § 15A-979(b) (2015) (providing that the denial of a motion to suppress

evidence “may be reviewed upon an appeal from a judgment of conviction, including

a judgment entered upon a plea of guilt[]”).

 Here, Defendant gave notice to the State that he intended to appeal the denial

of his motion to suppress, and the reservation of the right was noted in the transcript

of his no contest plea, which provided: “Defendant expressly reserves the right to

appeal the Court’s denial of Defendant’s Motion to Suppress, and his plea herein is

conditioned upon his right to appeal that decision pursuant to [N.C. Gen. Stat. §] 15A-

979(b).” However, Defendant’s 24 February 2015 Notice of Appeal failed to indicate

that he was appealing from the Judgment Suspending Sentence entered against him

as a result of his 11 February 2015 plea of no contest, as is required by N.C. Gen.

 -6-
 STATE V. JACKSON

 Opinion of the Court

Stat. § 15A-979(b). Instead, Defendant’s Notice of Appeal only indicated that he was

appealing from the order denying his motion to suppress.

 On 5 September 2015, Defendant filed a petition for writ of certiorari, asking

this Court to review the Judgment Suspending Sentence. “Whether to allow a

petition and issue the writ of certiorari is not a matter of right and rests within the

discretion of this Court.” State v. Biddix, __, N.C. App. __, __,780 S.E.2d 863, 866

(2015) (citation omitted). North Carolina Rule of Appellate Procedure 21(a) provides:

 The writ of certiorari may be issued in appropriate
 circumstances by either appellate court to permit review of
 the judgments and orders of trial tribunals when the right
 to prosecute an appeal has been lost by failure to take
 timely action, or when no right of appeal from an
 interlocutory order exists, or for review pursuant to
 N.C.G.S. § 15A-1422(c)(3) of an order of the trial court
 ruling on a motion for appropriate relief.

N.C. R. App. P. 21. In State v. Cottrell, this Court exercised its discretion and granted

the defendant’s petition for writ of certiorari, “because it is apparent that the State

was aware of defendant’s intent to appeal the denial of the motion to suppress prior

to the entry of defendant’s guilty pleas and because defendant has lost his appeal

through no fault of his own. . . .” 234 N.C. App. at 740, 760 S.E.2d at 277. Here,

applying the same reasoning as this Court imposed in Cottrell, we grant Defendant’s

petition for writ of certiorari and address Defendant’s appeal on the merits.

 III. Analysis

 -7-
 STATE V. JACKSON

 Opinion of the Court

 Defendant contends that the trial court erred in denying his motion to

suppress. We disagree.

 Our standard of review on an appeal from an order denying a motion to

suppress is “whether the trial judge’s underlying findings of fact are supported by

competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge’s ultimate conclusions of

law.” State v. Johnson, 98 N.C. App. 290, 294, 390 S.E.2d 707, 709 (1990) (quoting

State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). The trial court’s

conclusions of law are reviewed de novo. State v. O'Connor, 222 N.C. App. 235, 238–

39, 730 S.E.2d 248, 251 (2012) (internal quotation marks omitted). “Under a de novo

review, the court considers the matter anew and freely substitutes its own judgment

for that of the lower tribunal.” State v. Biber, 365 N.C. 162, 168, 712 S.E.2d 874, 878

(2011) (internal quotation marks and citation omitted).

 Whether probable cause exists to support issuance of search warrant by a

magistrate is reviewed under the “totality of the circumstances” test established by

the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 230, 76 L. Ed. 2d

527, 543 (1983), and adopted by the North Carolina Supreme Court in State v.

Arrington, 311 N.C. 633, 641–43, 319 S.E.2d 254, 259–261 (1984). Under the totality

of the circumstances test:

 [th]e task of the issuing magistrate is simply to make a
 practical, common sense decision whether, given all the

 -8-
 STATE V. JACKSON

 Opinion of the Court

 circumstances set forth in the affidavit before him,
 including the “veracity” and “basis of knowledge” of
 persons supplying hearsay information, there is a fair
 probability that contraband or evidence of a crime will be
 found in a particular place.

Arrington, 311 N.C. at 638, 319 S.E.2d at 257–58 (quoting Gates, 462 U.S. at 238, 76

L. Ed. 2d at 548). “ ‘[P]robable cause requires only a probability or substantial chance

of criminal activity, not an actual showing of such activity.’ ” State v. Riggs, 328 N.C.

213, 219, 400 S.E.2d 429, 433 (1991) (emphasis omitted) (quoting Gates, 462 U.S. at

243 n. 13, 76 L. Ed. 2d at 552 n. 13).

 Here, Defendant contests the following paragraph of the trial court’s order

denying Defendant’s motion to suppress,

 In the present matter, this Court concludes that the
 search warrant was based on information from a reliable
 confidential informant who provided information that was
 both accurate and fresh. The information that was
 provided included a detailed description of the Defendant,
 where he lived, directions to his house, where the
 marijuana was kept, and how it was packaged. This
 information was verified by both officers from the Iredell
 County Sheriffs’ [sic] Department and the Alexander
 County Sheriffs’ [sic] Department. This Court also
 concludes that the statements made by the confidential
 informant were against her penile [sic] interest in that she
 admitted to purchasing and possessing marijuana from the
 Defendant in the past few days.

 Defendant challenges the trial court’s findings regarding the information

provided by the confidential informant and the verification of that information by law

enforcement officers, arguing that it is not supported by competent evidence.

 -9-
 STATE V. JACKSON

 Opinion of the Court

Defendant contends that the balance of the challenged paragraph, comprised of

conclusions of law, is not supported by the findings of fact.

 For the reasons discussed below, we disagree with Defendant’s contentions.

And although the order denying Defendant’s motion to suppress omits a conclusion

that the application for the search warrant supported a finding of probable cause, the

trial court’s findings of fact, other conclusions of law, and ultimate denial of

Defendant’s motion to suppress necessitate such a conclusion. Accordingly, we

analyze the challenged findings and conclusions within the context of the larger issue

before this Court—whether the facts and circumstances set forth in the application

for the search warrant were sufficient to support a finding of probable cause.

 We start by considering the reliability of the information provided in the search

warrant application. “[A] magistrate is entitled to draw reasonable inferences from

the material supplied to him by an applicant for a warrant.” State v. Sinapi, 359 N.C.

394, 399, 610 S.E.2d 362, 365 (2005) (citation omitted). The North Carolina Supreme

Court has held that “great deference should be paid a magistrate’s determination of

probable cause and that after-the-fact scrutiny should not take the form of a de novo

review.” Arrington, 311 N.C. at 638, 319 S.E.2d at 258. However, this deference is

not unlimited. State v. Benters, 367 N.C. 660, 665, 766 S.E.2d 593, 598 (2014).

“[U]nder the totality of the circumstances test, a reviewing court must determine

‘whether the evidence as a whole provides a substantial basis for concluding that

 - 10 -
 STATE V. JACKSON

 Opinion of the Court

probable cause exists.’ ” Sinapi, 359 N.C. at 398, 610 S.E.2d at 365 (quoting State v.

Beam, 325 N.C. 217, 221, 381 S.E.2d 327, 329 (1989)). Therefore, “[a] reviewing court

has the duty to ensure that a magistrate does not abdicate his or her duty by ‘merely

ratifying the bare conclusions of affiants.’ ” Benters, 367 N.C. at 665, 766 S.E.2d at

598 (citation omitted).

 This Court has held:

 When probable cause is based on an informant’s tip a
 totality of the circumstances test is used to weigh the
 reliability or unreliability of the informant. Several factors
 are used to assess reliability including: (1) whether the
 informant was known or anonymous, (2) the informant's
 history of reliability, and (3) whether information provided
 by the informant could be and was independently
 corroborated by the police.

State v. Green, 194 N.C. App. 623, 627, 670 S.E.2d 635, 638 (2009) (internal quotation

marks and citation omitted). We therefore assess the reliability of the information

provided by the confidential informant under the totality of the circumstances test,

weighing these reliability factors.

A. Confidential and Reliable Tip Standard

 As an initial matter, because the affidavit of Deputy Ward is based in part on

information provided to Detective Jurney from an informant unknown to Deputy

Ward, “we must determine the reliability of the information by assessing whether the

information came from an informant who was merely anonymous or one who could

be classified as confidential and reliable.” Benters, 367 N.C. at 665, 766 S.E.2d at 598

 - 11 -
 STATE V. JACKSON

 Opinion of the Court

(citation omitted). Information from an anonymous source is afforded less weight in

the totality of circumstances than information that is confidential and reliable. See

State v. Hughes, 353 N.C. 200, 205–06, 539 S.E.2d 625, 629 (2000).

 In order for a reviewing court to weigh an informant’s tip as confidential and

reliable, “evidence is needed to show indicia of reliability[.]” Id. at 204, 539 S.E.2d at

628. Indicia of reliability may include statements against the informant’s penal

interests and statements from an informant with a history of providing reliable

information. Benters, 367 N.C. at 665, 766 S.E.2d at 598. Even if an informant does

not provide a statement against his/her penal interest and does not have a history of

providing reliable information to law enforcement officers, the Supreme Court has

suggested that “other indication[s] of reliability” may suffice. Hughes, 353 N.C. at

204, 539 S.E.2d at 628.

 “When sufficient indicia of reliability are wanting,” a reviewing court uses the

anonymous tip standard to evaluate the reliability of information provided by an

informant. Benters, 367 N.C. App. at 666, 766 S.E.2d at 598 (citation omitted).

 An anonymous tip, standing alone, is rarely sufficient, but
 the tip combined with corroboration by the police could
 show indicia of reliability that would be sufficient to pass
 constitutional muster. Thus, a tip that is somewhat
 lacking in reliability may still provide a basis for probable
 cause if it is buttressed by sufficient police corroboration.
 Under this flexible inquiry, when a tip is less reliable, law
 enforcement officers carry a greater burden to corroborate
 the information.

 - 12 -
 STATE V. JACKSON

 Opinion of the Court

Id. at 666, 766 S.E.2d at 598–99 (internal quotation marks and citations omitted).

The North Carolina Supreme Court has utilized the anonymous tip standard in State

v. Hughes, 353 N.C. 200, 539 S.E.2d 625 (2000), and State v. Benters, 367 N.C. 660,

766 S.E.2d 593 (2014).

 In Hughes, a “confidential, reliable informant” provided a tip to the captain of

the Onslow County Sheriff’s Department regarding the defendant’s possession of

marijuana and cocaine. 353 N.C. at 201–02, 539 S.E.2d at 627. The captain, who

received the tip by phone, relayed the information to a detective with the Jacksonville

Police Department. Id. at 201, 539 S.E.2d at 627. The detective then relayed the

information to another detective within the department. Id. The two Jacksonville

Police Department detectives subsequently conducted an investigatory stop of the

defendant and discovered drugs on his person. Id. at 202-03, 539 S.E.2d at 628. The

North Carolina Supreme Court applied the anonymous tip standard and reversed the

defendant’s criminal conviction because the informant had not been used to give

accurate information in the past and because the captain—the only officer who spoke

with the informant—did not convey to the other officers how he knew the informant

or why the informant was reliable. Id. at 204, 539 S.E.2d at 629. The Supreme Court

further noted that the statement of the informant was not against his/her penal

interest, and that “[t]he only evidence showing that the identity of this informant was

known is [the captain’s] conclusory statement that the informant was confidential

 - 13 -
 STATE V. JACKSON

 Opinion of the Court

and reliable.” Id. at 204, 539 S.E.2d at 627. Accordingly, the Supreme Court applied

the anonymous tip standard in assessing the reliability of the informant, holding that

“[w]ithout more than the evidence presented, we cannot say there was sufficient

indicia of reliability to warrant use of the confidential and reliable informant

standard.” Id. at 205, 539 S.E.2d at 629.

 In Benters, after receiving a tip from an informant face-to-face, a detective with

the Franklin County Sheriff’s Office relayed to a lieutenant with the Vance County

Sheriff’s Office that a residence owned by the defendant in Vance County was being

used as “an indoor marijuana growing operation.” 367 N.C at 661–62, 766 S.E.2d at

596. The lieutenant who received this third-hand information then applied for a

search warrant, in which he described the informant as a “confidential and reliable

source of information.” Id. at 662, 766 S.E.2d at 596. After noting that the

information provided by the informant did not contain a statement against his/her

penal interest and also noting that the informant did not have a track record, the

Supreme Court assessed whether the face-to-face meeting between the informant and

the detective who initially received the tip provided additional indicia of reliability.

Id. at 665–67, 766 S.E.2d at 598–99. Although that detective received the tip through

a face-to-face meeting with the informant, as opposed to by phone as in Hughes, the

Supreme Court still applied the anonymous tip standard, holding that the affiant

officer had nothing more than another officer’s “ ‘conclusory statement that the

 - 14 -
 STATE V. JACKSON

 Opinion of the Court

informant was confidential and reliable[.]’ ” Id. at 668, 766 S.E.2d at 600 (quoting

Hughes, 353 N.C. at 204, 539 S.E.2d at 629). The Supreme Court explained further

why the anonymous tip standard applied:

 [T]he affidavit here fails to establish the basis for [the
 Franklin County detective’s] appraisal of his source’s
 reliability, including the source’s demeanor or degree of
 potential accountability. The affidavit does not disclose
 whether [the Franklin County detective] met his source
 privately, or publicly and in uniform such that the source
 could risk reprisal. Moreover, nothing in the affidavit
 suggests the basis of the source’s knowledge.

Id. at 668–69, 766 S.E.2d at 600.

 Turning to the case before us, in determining which standard applies to the

confidential informant’s tip, we note that the informant did not have a history of

providing reliable information in the past. The trial court found in pertinent part:

 Detective Ward indicated that he had never met with the
 confidential informant and was relying upon her
 trustworthiness from Detective Sergeant Jurney.
 Detective Sergeant Jurney indicated that she had never
 worked with the confidential informant before, but the
 information she provided was detailed and accurate as to a
 description of the Defendant, where the marijuana was
 located, and where the Defendant lived.

The confidential informant’s lack of a “track record” however, does not require this

Court to consider the tip anonymous. “What is popularly termed a ‘track record’ is

only one method by which a confidential source of information can be shown to be

reliable for purposes of establishing probable cause.” Riggs, 328 N.C. at 219, 400

 - 15 -
 STATE V. JACKSON

 Opinion of the Court

S.E.2d at 433. Instead, in determining whether to apply the anonymous tip standard

or the confidential and reliable tip standard, we assess whether the information

provided by the informant includes a statement against her penal interest and other

indicia of her reliability.

 “Whether a statement is in fact against interest must be determined from the

circumstances of each case.” Williamson v. United States, 512 U.S. 594, 601, 129 L.

Ed. 2d 476, 484 (1994). Here, in the order denying Defendant’s motion to suppress,

the trial court concluded that “the statements made by the confidential informant

were against her penile [sic] interest in that she admitted to purchasing and

possessing marijuana from the Defendant in the past few days.” This conclusion is

supported by the following findings of the trial court that: “two days prior [to her

discussion with Detective Jurney], the confidential informant had been to the home

of Adam Robert Jackson and purchased marijuana[;] . . . “the confidential informant

had purchased marijuana from inside the home[;] and [] the confidential informant

had bought marijuana on several prior occasions from the Defendant at the same

residence.” These findings are supported by the search warrant application and the

officers’ testimony at the suppression hearing.

 “Statements against penal interest carry their own indicia of credibility

sufficient to support a finding of probable cause to search.” Beam, 325 N.C. at 221,

381 S.E.2d at 330. This Court and the Supreme Court have categorized an

 - 16 -
 STATE V. JACKSON

 Opinion of the Court

informant’s statement implicating that the informant had used and/or purchased

marijuana in the past as a statement against the informant’s penal interest, for the

purpose of weighing reliability. See, e.g., State v. Witherspoon, 110 N.C. App. 413,

418, 429 S.E.2d 783, 786–87 (1993) (categorizing an informant’s statement as one

against his penal interest where the informant told an officer that he had used

marijuana, “thus admitting [the informant’s] possession and use of a controlled

substance in the past”); Arrington, 311 N.C. at 641, 319 S.E.2d at 259 (holding that

“[t]he information supplied by the first informant establishes, against the informant’s

penal interest, that he had purchased marijuana from the defendant[]”).

 Defendant contends that the confidential informant’s statement was not

against her penal interest because it “was motivated by a desire to curry favor with

the authorities to help her avoid conviction on her own charges.” In Arrington, the

North Carolina Supreme Court refuted this argument:

 Common sense in the important daily affairs of life would
 induce a prudent and disinterested observer to credit these
 statements. People do not lightly admit a crime and place
 critical evidence in the hands of the police in the form of
 their own admissions. Admissions of crime, like admissions
 against proprietary interests, carry their own indicia of
 credibility—sufficient at least to support a finding of
 probable cause to search. That the informant may be paid
 or promised a “break” does not eliminate the residual risk
 and opprobrium of having admitted criminal conduct.

311 N.C. at 641, 319 S.E.2d at 259 (quoting United States v. Harris, 403 U.S. 573,

583–84, 29 L. Ed. 2d 723, 734 (1971)).

 - 17 -
 STATE V. JACKSON

 Opinion of the Court

 Here, the record evidence does not indicate that the confidential informant

claimed that she was unaware that the substance that she possessed was marijuana.

To the contrary, the statement of Detective Jurney, included in the search warrant

application, provides that “[t]he confidential informant told Det. Sgt. Jurney that

he/she, along with other individuals, had purchased marijuana from [Defendant]

numerous times at that residence.” Even if the confidential informant had been

motivated to provide this information by a desire to curry favor with Detective Jurney

and potentially help her avoid conviction, she still would have incurred the “residual

risk” of having admitted purchasing, and in turn, possessing marijuana. Accordingly,

we hold that the information provided was against the confidential informant’s penal

interest.

 Noting that the confidential informant did not have a track record of providing

reliable information, but did make statements against her penal interest, we consider

other indicia of the confidential informant’s credibility and reliability, including the

face-to-face nature of the officer’s encounter with her and the confidential informant’s

first-hand knowledge of the information.

 The information that Detective Jurney relayed to Deputy Ward regarding the

Defendant’s criminal conduct was first ascertained during a face-to-face encounter

between Detective Jurney and the confidential informant. “ ‘The police officer making

the affidavit may do so in reliance upon information reported to him by other officers

 - 18 -
 STATE V. JACKSON

 Opinion of the Court

in the performance of their duties.’ ” Witherspoon, 110 N.C. App. at 418, 429 S.E.2d

at 785–86 (quoting State v. Vestal, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971)).

Here, Deputy Ward’s affidavit did not merely rely on the information relayed by

Detective Jurney. Instead, Detective Jurney accompanied Deputy Ward to apply for

the search warrant and provided a written statement as part of the warrant

application. The face-to-face nature of Detective Jurney’s encounter with the

confidential informant, outlined in her written statement, distinguishes this case

from Hughes and Benters. Here, Detective Jurney had the opportunity to assess the

informant’s demeanor during their initial encounter and during their drive to confirm

Defendant’s address. Additionally, the nature of this face-to-face conversation

between Detective Jurney and the informant “significantly increased the likelihood

that [the informant] would be held accountable if her tip proved to be false.” State v.

Allison, 148 N.C. App. 702, 705, 559 S.E.2d 828, 830 (2002).

 The confidential informant had first-hand knowledge of the facts she provided.

Detective Jurney’s written statement detailed the manner in which the confidential

informant came to observe the information that she then relayed, specifically

acknowledging that the informant had purchased marijuana from Defendant’s

residence just two days prior. The informant provided detailed information, including

that during this most recent purchase of marijuana, Defendant went into a bedroom

located on the right side of his house, turned a key in a lock, and returned with a

 - 19 -
 STATE V. JACKSON

 Opinion of the Court

mason jar containing marijuana. By contrast, the applications for the search

warrants at issue in Hughes and Benters failed to explain how the informants in those

cases had become aware of the defendants’ criminal activity. In addition to Deputy

Jurney’s detailed statement, Deputy Ward’s affidavit explained specific

circumstances underlying the search warrant application sufficient for an

assessment of the confidential informant’s reliability.

 For the aforementioned reasons, we evaluate the reliability of the information

provided by the informant under the confidential and reliable standard.

B. Police Corroboration

 Another factor in assessing the reliability or unreliability of an informant is

“whether information provided by the informant could be and was independently

corroborated by the police.” Green, 194 N.C. App. at 627, 670 S.E.2d at 638. As

explained supra, information provided by the informant in this case is more reliable

than a tip from an anonymous source. “On the fluid balance prescribed by the

Supreme Court, a less specific or less reliable tip requires greater corroboration to

establish probable cause.” Benters, 367 N.C. at 669–70, 766 S.E.2d at 601 (citation

omitted).

 Both Detective Jurney and Deputy Ward corroborated the confidential

informant’s tip in various respects. Detective Jurney searched the CJ LEADS

database for “Adam Jackson” and found a person named Adam Robert Jackson with

 - 20 -
 STATE V. JACKSON

 Opinion of the Court

the listed address of 2099 Old Mountain Road—the name and location provided by

the informant. Detective Jurney’s database search also corroborated the informant’s

description of Defendant’s appearance and age.

 In addition to providing an address and general description of the

neighborhood of Defendant’s residence, the informant accompanied Detective Jurney

to a mailbox marker that read 2099 Old Mountain Road, and explained that

Defendant’s residence was down a private driveway, located on the left side of a fork.

After Detective Jurney relayed this information to the Alexander County Sheriff’s

Office, Captain Clarence Harris drove to the address and ventured down the private

driveway, where he confirmed the exact location of Defendant’s residence consistent

with the confidential informant’s description.

 Deputy Ward, after receiving the aforementioned information from Detective

Jurney, conducted a criminal record search and discovered that “Adam Robert

Jackson” had been charged with possession of marijuana just over a month earlier,

on 22 December 2012. Deputy Ward also noted that he had “received information on

several occasions throughout the past year from concerned citizens in the area of the

premise to be searched, about drug traffic mainly [m]arijuana at the premise to be

searched.”

 Defendant challenges the trial court’s finding that law enforcement officers

verified information regarding where the marijuana was kept and how it was

 - 21 -
 STATE V. JACKSON

 Opinion of the Court

packaged. We agree that this finding does not corroborate the reliability of the

information because the officers did not locate the marijuana before applying for the

search warrant. In order to carry weight as corroborating evidence for the purpose

of determining the reliability of a tip, information must have been presented to the

magistrate who issued the search warrant. See N.C. Gen. Stat. § 15A-245 (2015)

(providing that “information other than that contained in the affidavit may not be

considered by the issuing official in determining whether probable cause exists for

the issuance of the warrant unless the information is either recorded or

contemporaneously summarized in the record or on the face of the warrant by the

issuing official[]”); see also Benters, 367 N.C. at 673, 766 S.E.2d at 603; Hughes, 353

N.C. at 208–09, 539 S.E.2d at 631–32; State v. Brown, 199 N.C. App. 253, 258–59,

681 S.E.2d 460, 464–65 (2009); State v. Holmes, 142 N.C. App. 614, 621, 544 S.E.2d

18, 23 (2001); State v. Earhart, 134 N.C. App. 130, 133–34, 516 S.E.2d 883, 886 (1999).

However, we hold that the trial court’s other findings regarding the officers’

verification of Defendant’s physical appearance, address, and specific directions to

Defendant’s residence are supported by competent evidence and are sufficient to

support the trial court’s conclusion that probable cause was established.

C. Freshness of Tip

 We also consider the freshness of the confidential informant’s information. The

informant provided Deputy Ward with detailed information regarding her purchase

 - 22 -
 STATE V. JACKSON

 Opinion of the Court

of marijuana from Defendant just two days prior. The informant relayed specific

details, including witnessing Defendant go into a bedroom located on the right side

of his residence, hearing the sound of a key turning in a lock, and observing

Defendant return to the room where she was waiting with a mason jar filled with

marijuana. In the order denying Defendant’s motion to suppress, the trial court made

findings of fact encompassing all of this information.

 The passage of two days between an informant’s observation of criminal

activity and an issuance of a search warrant bolsters the reliability of a tip. See State

v. Singleton, 33 N.C. App. 390, 392, 235 S.E.2d 77, 79 (1977) (holding that because

the affidavit “narrowed down the informant’s observation to within 48 hours of the

time the warrant was obtained[,] . . . the magistrate, acting upon this information,

could reasonably conclude that there was probable cause to believe that the drugs

were still in defendant’s possession[]”). Accordingly, we hold that the timely nature

of the informant’s tip provides additional indicia of reliability.

 For these same reasons, we hold that the conclusion of law challenged by

Defendant that “the search warrant was based on information from a reliable

confidential informant who provided information that was both accurate and fresh[,]”

is supported by the trial court’s findings of fact, which, in turn, are supported by

competent evidence.

 IV. Conclusion

 - 23 -
 STATE V. JACKSON

 Opinion of the Court

 In assessing the reliability of the information provided by the informant under

the confidential and reliable tip standard, we consider that the information was

obtained first-hand, that it was against the informant’s penal interest, and that it

was timely and not stale. Additionally, we hold that Detective Jurney and Deputy

Ward’s corroboration of this information was adequate to support a finding of

probable cause. Accordingly, under the totality of the circumstances test, we hold

that the application for the search warrant was sufficient to support the magistrate’s

finding of probable cause.

 AFFIRMED.

 Judge STEPHENS concurs.

 Judge HUNTER, JR. concurs in part, dissents in part, by separate opinion.

 No. COA15-876 – State v. Jackson

 HUNTER, JR., Robert N., Judge, concurring in part, dissenting in part.

 As an initial matter, I join the majority in granting Defendant’s petition for

writ of certiorari. However, I respectfully dissent from the majority in favor of

reversing the trial court.

 - 24 -
 STATE V. JACKSON

 HUNTER, JR., J., Concurring in Part, Dissenting in Part

 Reviewing the totality of the circumstances, and all of the record evidence, no

probable cause existed for a warrant to issue in this case. See State v. Sinapi, 359

N.C. 394, 398, 610 S.E.2d 362, 365 (2005) (quoting State v. Beam, 325 N.C. 217, 221,

381 S.E.2d 327, 329 (1989)). To uphold my “duty to ensure that a magistrate does

not abdicate his or her duty by ‘merely ratifying the bare conclusions of affiants,’” I

detail the following record evidence of the events leading up to Deputy Ward’s search

warrant application. State v. Benters, 367 N.C. 660, 665, 766 S.E.2d 593, 598 (2014)

(internal quotation marks and citation omitted).

 As the majority states, Detective Jurney spoke with the confidential informant,

whom she had never met before, during a knock-and-talk on 30 January 2013.

Detective Jurney performed this knock-and-talk with another Iredell County

narcotics detective in connection with an unrelated criminal case. No charges were

ever filed against the confidential informant, though she admitted to previously

purchasing some quantity of marijuana from Defendant on a prior occasion.

 The next day, on 31 January 2013, the confidential informant directed officers

to Defendant’s residence. She identified Defendant’s home and discussed the details

of her previous marijuana purchase. She described Defendant’s physical appearance

and age. Officers confirmed Defendant’s residency and past appearance using CJ

LEADS.

 - 25 -
 STATE V. JACKSON

 HUNTER, JR., J., Concurring in Part, Dissenting in Part

 Thereafter, Deputy Jurney relayed the information to Deputy Kelly Ward of

the Alexander County Sheriff’s Office because Defendant’s residence is located in

Deputy Ward’s jurisdiction. Deputy Ward attached Deputy Jurney’s affidavit to a

search warrant application to search Defendant’s home.

 At the suppression hearing, Detective Jurney testified she did not remember

saying “[to the confidential informant] that if [she] did not cooperate . . . that [her]

daughter would be removed from her custody.” Detective Jurney testified the

confidential informant stated she bought marijuana from Defendant after officers

“indicated . . . [that] the confidential informant [ ] was facing criminal charges

herself.”

 According to Detective Jurney, “high school kids” contacted her “out of the

blue” “on several occasions throughout [January 2012 through January 2013].” The

students voiced concern about their friend who “[bought] drugs and us[ed] cocaine”

from Defendant. The record discloses no information about these individuals, the

number of times they contacted Detective Jurney, or the circumstances surrounding

their conversations with Detective Jurney.

 Prior to the search, officers knew Defendant matched the confidential

informant’s description of him, based upon his past photo in the CJ LEADS system.

Officers also knew Defendant lived at the home the confidential informant identified

because of his listed residence on CJ LEADS. They also knew Defendant was charged

 - 26 -
 STATE V. JACKSON

 HUNTER, JR., J., Concurring in Part, Dissenting in Part

with possession of marijuana two months prior in December 2012. Apart from this,

the officers did not corroborate the confidential informant’s information about

Defendant’s marijuana business.

 This Court, and our Supreme Court, have upheld searches of suspected drug

traffickers’ residences because “officers [ ] discovered some specific and material

connection between drug activity and the place to be searched.” State v. Allman, ___

N.C. App. ___, ___, 781 S.E.2d 311, 317 (2016). Examples of this include: pulling a

suspect’s trash that is placed at the curb and uncovering several marijuana plants,

Sinapi, 359 N.C. at 395, 610 S.E.2d at 363; performing controlled drug buys at the

suspect’s residence using confidential sources, State v. Riggs, 328 N.C. 213, 215–16,

400 S.E.2d 429, 431 (1991); and staking out the suspect’s residence and observing a

high volume traffic pattern “with visitors only staying [inside] for about one minute”

and observing several persons being arrested during that time period for drug

possession “as they exited the suspect residence,” State v. Crawford, 104 N.C. App.

591, 596, 410 S.E.2d 499, 501 (1991).

 The verb “corroborate” means, “To strengthen or confirm; to make more

certain.” Black’s Law Dictionary (10th ed. 2014). A witness’s testimony is said to be

corroborated when “it is shown to correspond with the representation of some other

witnesses, or to comport with some facts otherwise known or established.” Black’s

Law Dictionary 344 (6th ed. 1990). Here, the officers did not corroborate the

 - 27 -
 STATE V. JACKSON

 HUNTER, JR., J., Concurring in Part, Dissenting in Part

confidential informant’s information. The officers corroborated Defendant’s

appearance, history of marijuana possession, residence, and the confidential

informant’s ability to navigate to the residence. The officers did not perform any

controlled drug buys, observe a large number of visitors that is consistent with an

ongoing marijuana operation, pull Defendant’s trash to find marijuana or marijuana

plants, or review Defendant’s electricity and water consumption to corroborate any

suspicion of marijuana manufacturing. Rather, the officers applied for a search

warrant using a previously unknown informant’s statements regarding her past

behavior, which were made after the officers told her she was facing criminal charges,

and were possibly made after officers threatened to take her daughter from her.

 For the Fourth Amendment to have any effect, officers should corroborate the

information given to them in circumstances like these. The confidential informant’s

information and the information in Deputy Jurney’s affidavit, taken in light of the

totality of the circumstances, do not provide a substantial basis for concluding that

probable cause exists. Sinapi, 359 N.C. at 398, 610 S.E.2d at 365 (quoting State v.

Beam, 325 N.C. 217, 221, 381 S.E.2d 327, 329 (1989)). Accordingly, I must

respectfully dissent.

 - 28 -